**UNITED STATES, Appellee**

v.

**Private First Class Michael S. THOMP-SON, 004–78–6961, United States Army, Appellant.**

**ARMY 9401240.**

U.S. Army Court of Criminal Appeals.

20 March 1995.

**896**

For Appellant: Lieutenant Colonel John T. Rucker, JAGC, Captain Walter S. Weedman, JAGC (on brief).

For Appellee: Colonel John M. Smith, JAGC, Major Lyle D. Jentzer, JAGC, Captain Michael E. Mulligan, JAGC, Captain John G. Giovannelli, JAGC (on brief).

Before CAIRNS, GONZALES, and RUSSELL, Appellate Military Judges.

## OPINION OF THE COURT

RUSSELL, Judge:

A general court-martial convicted the appellant, pursuant to his pleas, of wrongful distribution (two specifications) and use of marijuana in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (1988) [hereinafter UCMJ]. A panel of officers and enlisted soldiers sentenced the appellant to a dishonorable discharge, confinement for eighteen months, forfeiture of $300.00 pay per month for eighteen months and reduction to E1. The convening authority, pursuant to a pretrial agreement and exercising his clemency power, approved the forfeitures and reduction as adjudged, but reduced the confinement to eleven months and twenty-nine days and reduced the discharge to a bad-conduct discharge.

This case is before the court for automatic review pursuant to Article 66, UCMJ. We have examined the record of trial, the assignments of error, the assertions of error raised personally by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and the government's reply. The appellant asserts that he was twice punished for the same misconduct and denied due process of law when the military judge: (1) failed to provide complete credit for nonjudicial punishment suffered by the appellant for the same misconduct charged at this court-martial, and (2) allowed the prosecution to exploit prior nonjudicial punishment as a matter in aggravation on sentencing. *United States v. Pierce*, 27 M.J. 367, 369 (C.M.A. 1989). We agree, and are therefore compelled to set aside the appellant's sentence.

### I. Facts

The appellant voluntarily entered onto active duty from the National Guard in November 1990 during Operation Desert Shield/Storm. After nearly six months in Saudi Arabia, he returned to the United States for duty with the 24th Infantry Division (Mechanized) at Fort Stewart, Georgia. He was joined there by his eighteen year-old wife and infant son.

Initially, the appellant thrived on Army life. He won the Brigade Soldier of the Month competition, and completed leadership training as an honor graduate. However, his marriage began to fall apart. He was divorced in August of 1993, and the appellant's son was placed in his mother's custody in Maine. In response to the stress of his divorce and separation from his son, he be-

came increasingly dependent upon alcohol and marijuana, resorting to marijuana often on a daily basis.

In February 1994, the appellant tested positive for marijuana use after a unit urinalysis inspection. Consequently, Major Tobin, his commander, imposed nonjudicial punishment for using marijuana between 22 January and 22 February 1994. Showing leniency to the appellant because of his excellent prior duty performance, the commander imposed a one-grade reduction (suspended) and extra duty for thirty days.

The appellant continued to personally purchase and use marijuana after imposition of the Article 15. In April 1994, he received a call from his roommate, with whom he lived in a trailer off-post. The roommate, who was calling from a local nightclub, asked him to obtain a small amount of marijuana for the roommate's female friend.[1] The appellant replied that he really didn't want to. However, his roommate persuaded him to agree, saying that it would be a "big favor" and that he would appreciate it.

The appellant thereafter agreed to obtain the marijuana "as a favor" for his roommate. A short time later, after being introduced to the "friend," he obtained a small amount of marijuana for her. A few days later, the roommate asked again on behalf of his "friend," and the appellant repeated the favor and obtained some more marijuana for the friend. When asked by the "friend" to procure marijuana a third time, he declined and was quickly apprehended. When news of his apprehension for drug-related offenses reached Major Tobin, he vacated the reduction in grade that had been earlier suspended.

The appellant completely admitted his guilt to investigators. He submitted a request to be discharged in lieu of court-martial, which was forwarded with recommendations from the chain of command. Major Tobin, in recommending disapproval, set the theme for the trial to come: "I had previously given the soldier the benefit of the doubt and he continued usage and admitted to selling the marijuana." The request was disap-

proved. The appellant thereafter waived his right to have his charges investigated pursuant to Article 32, UCMJ, and the convening authority promptly referred the charges to a general court-martial.

At trial, the appellant pleaded guilty as charged to two distributions of marijuana and use of marijuana on divers occasions from May of 1993 to May of 1994. The prosecution offered the report of Article 15 for use of marijuana between 22 January and 22 February 1994, without defense objection. The military judge noted that the Article 15 punished the same misconduct that was before the court-martial, and observed that "he must receive credit for any punishment received from an Article 15 for the same offenses of which he's being tried for." After questioning counsel about whether additional credit should be granted because the distribution offenses provided the basis for vacating the suspended Article 15 punishment, the military judge then admitted the Article 15 record into evidence as a prosecution exhibit. Furthermore, he ruled:

> [B]ecause the Article 15 original use does cover a portion of the time charged in the Charge Sheet, ... I will tell the court members that they are to consider the fact that the accused received an Article 15 concerning the use ... and they should consider that in arriving at a sentence. But no instruction regarding any credit will be given.

During the sentencing portion of the trial, the government called Major Tobin as a witness in aggravation. Major Tobin testified about having suspended a portion of the nonjudicial punishment imposed on the appellant because he "had no previous problems with the soldier." He went on to testify about how he felt when he learned about the appellant's subsequent drug involvement: "[I]t gave me a feeling of betrayal. Here I had ... given him the benefit of the doubt ... and then to come up with the selling of the drugs really betrayed me and lost my confidence that I had in the soldier."

[1]. Though unknown to either the appellant or his roommate, the "friend" was in reality a female undercover agent of the Army's Criminal Investigation Command.

The prosecutor then used the prior Article 15 as the centerpiece of his argument depicting the appellant as an unrepentant recidivist:

He was given that Article 15 for a positive urinalysis earlier this year. And his command, however, was lenient with his punishment ... because of his past performance, because he was a good worker.... They gave him a chance to prove that he was more than just a good worker, but a chance to prove that he was a good soldier. But this accused did not live up to their expectations.

.... :

Later, the trial counsel reinforced the theme:

Now, in aggravation you have the fact that this accused was given what so many others aren't. He was given a second chance. Three months ago his punishment on his Article 15 was suspended and he blew it. You don't need to give him a third chance. He has shown that giving him a chance doesn't work.

The trial counsel returned to his theme in his summary:

[T]ell him that by not changing his behavior when he was given a second chance, he only made matters worse. Tell him this by sentencing him to a dishonorable discharge.

. . . . .

The military judge instructed the members that:

You should consider, of course, the fact that the accused has received a prior Article 15, but you also need to consider that his suspended punishment from that Article 15 was vacated for the offenses of which he stands convicted. Moreover, you need to remember that the Article 15 itself was for use of marijuana, which is consumed within the use offense of which the accused has been convicted within this court-martial. As you look at the Charge

Sheet you'll see that his use extended over a year's time, from May of 1993 to May of 1994. As I said, that charge consumes the use offense that he was found guilty at the Article 15 proceeding, which you will have a record of during your deliberation.

## II. The Law

■■■■ Congress did not intend for imposition of nonjudicial punishment for a serious offense to preclude the subsequent court-martial of a soldier for the same serious offense. UCMJ art. 15(f). However, Congress also did not intend for a soldier to be twice punished for the same offense, or that a prior nonjudicial punishment could be exploited by the prosecution at a court-martial for the same conduct; either consequence would violate the most obvious, fundamental notions of due process of law. *United States v. Pierce*, 27 M.J. 367 (C.M.A.1989) (Cox, Judge). Thus, in the rare case where an accused is charged with misconduct for which he has previously been punished under Article 15, he must be given "complete credit for any and all nonjudicial punishment suffered: day for day, dollar for dollar, stripe for stripe." *Id.* at 369. Furthermore, the prior non-judicial punishment may not be used by the government for *any* purpose at trial because, under these circumstances, it simply has no legal relevance. *Id.*

## III. Discussion

■■■■ The appellant's sentence was not correct in law and fact. UCMJ art. 66(d). In light of *Pierce*, we are satisfied that the military judge erred twice: first when he failed to assess appropriate administrative credit against the adjudged sentence for the prior punishment, and second when he permitted the government to exploit the fact that the appellant had received the prior punishment.[2] Except for the reduction of the dishonorable discharge to a bad-conduct discharge,[3] the sentence approved by the

2. However, the real first error was the trial counsel trying to admit the Article 15. The second was the defense counsel not objecting.

3. The convening authority's approval of a less severe form of discharge was not related to the errors noted regarding the Article 15. The trial

defense counsel, in his clemency petition, argued that the appellant's sentence to a dishonorable discharge (DD) should be mitigated to a bad-conduct discharge in the interest of sentencing consistency. The trial defense counsel produced a chart comparing sentences imposed in similar

convening authority is the maximum allowed by the pretrial agreement. Thus, we are satisfied that the convening authority did not silently credit the nonjudicial punishment against the approved sentence. *Cf. Pierce* at 370. Moreover, we are satisfied that the government's effective use in aggravation of the episode of nonjudicial punishment no doubt resulted in a substantially harsher punishment than otherwise might have been adjudged.

 In cases such as this, where no meaningful relief has been provided by the military judge or the convening authority, we may consider reassessment of the sentence approved by the convening authority. *See United States v. Flynn*, 39 M.J. 774, 775 n. 2 (A.C.M.R.1994); *United States v. Strickland*, 36 M.J. 569 (A.C.M.R.1992). However, in this case we conclude that we cannot reliably determine what sentence would have been imposed at trial if the error had not oc-

curred. *See United States v. Sales*, 22 M.J. 305 (C.M.A.1986).

The other assertions of error, to include those raised personally by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), are without merit.

The findings of guilty are affirmed. The sentence is set aside. A rehearing on the sentence may be ordered by the same convening authority.

Senior Judge CAIRNS and Judge GONZALES concur.

cases in the same jurisdiction, none of which had resulted in a DD. It is clear from the record that this sentence comparison was the basis for the clement action.

While such sentence comparisons in unrelated cases may be considered by a convening authori-

ty as a clemency matter, they are generally not a proper consideration for determining sentence appropriateness. *See United States v. Leininger*, 25 M.J. 746 (A.C.M.R.1987).