UNITED STATES, Appellee,

v.

Specialist Stephen E. BOONE, Jr., 096–58–1894, United States Army, Appellant.

ARMY 9200231.

U.S. Army Court of Criminal Appeals.

26 Sept. 1996.

For Appellant: Richard T. McNeil (argued); Captain Michael E. Hatch, JA; Captain Stanley M. Bell, JA (on brief); Captain Stephen P. Bell, Jr., JA.

For Appellee: Captain Robert F. Resnick, JA (argued); Colonel John M. Smith, JA; Lieutenant Colonel Eva M. Novak, JA; Major Anthony P. Nicastro, JA; Major Randy V. Cargill, JA, USAR (on brief); Captain Joanne P. Tetreault, JA.

Before GRAVELLE, Senior Judge, and JOHNSTON and ECKER, Appellate Military Judges.

## OPINION OF THE COURT
## ON REMAND

GRAVELLE, Senior Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial consisting of officer and enlisted members of attempted rape and two specifications of rape in violation of Articles 80 and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 880 and 920 (1988). The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for sixty years, forfeiture of all pay and allowances, and reduction to Private E1, but suspended for one year the confinement in excess of fifty years.

We are asked to decide if the appellant was provided effective assistance of counsel during the sentencing phase of his court-martial. We hold that the appellant has sufficiently met his burden of showing ineffective assistance of counsel and prejudice so that he is entitled to remedial action by this court.

### I. Procedural History

On 25 January 1994, this court affirmed the appellant's conviction and the sentence after holding that the appellant had failed to meet his burden of showing that his military

and civilian defense counsel, individually and as a defense team, were ineffective before, during, and after trial under the standards of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *United States v. Boone,* 39 M.J. 541 (A.C.M.R.1994).

On 25 August 1995, the United States Court of Appeals for the Armed Forces set aside this court's decision as to the sentence and returned the record for further factfinding regarding the performance of the two trial defense counsel during the sentencing phase of trial. *United States v. Boone,* 42 M.J. 308 (1995). After further factfinding, we were instructed to reconsider our decision affirming the sentence.

The opinion of the Court of Appeals for the Armed Forces contains a detailed description of the appellant's criminal conduct leading to his conviction and of his allegations of ineffective assistance of counsel. *Id.* at 309–13. Both that court's opinion and our previous opinion contain a description of the appellate exhibits available to us at the time of our original decision.

In its opinion, the Court of Appeals pointed out that the appellant, by affidavit, asserted that his mother and his uncle, a career Air Force officer, were ready and willing to testify on his behalf as to his family background and good character. That court also pointed out the appellant's clean disciplinary record and the lack of any witnesses from his unit and chain of command.[1] Finally, the Court of Appeals could "find no explanation and can discern no tactical reason from the record for the meager defense [sentencing] presentation." *Id.* at 313.

On 3 November 1995, we ordered that the civilian defense counsel (Mr. Woodward) and military defense counsel (then-Captain Neeves) each file with this court an affidavit specifically addressing questions about their performance in preparation for and during the sentencing phase of trial. Because Mr. Woodward was primarily responsible for presentation of the case at trial, we ordered that he answer a series of specific questions about

---

1. At the appellant's sentencing proceeding the government presented no evidence in aggravation. The defense sentencing case consisted of a short unsworn statement made by the civilian defense counsel on the appellant's behalf, in which he described the appellant's upbringing, remorse about the incidents, and spotless disciplinary record in the military.

his activities regarding the sentencing case. Those affidavits have now been received, and briefs addressing the information presented therein have been filed by appellate defense and appellate government counsel. In addition, the court heard oral argument in this case.

The appellate defense counsel assert that the affidavits fail to articulate a defense strategy and show a distinct lack of preparation for and interest in the sentencing proceeding by Mr. Woodward. Appellate counsel for the government argue that the appellant, convicted of the rapes of two women and the attempted rape of a third, received an appropriate sentence for his crimes, and that the appellant has failed to meet his heavy burden of showing prejudice.

## II. The Affidavits

In response to our order, Mr. Neeves filed an affidavit stating that he interviewed three potential sentencing witnesses, and that he turned over his written interview notes to Mr. Woodward at the time Mr. Woodward was hired by the appellant. Mr. Neeves attached to his affidavit his notes on the three prospective sentencing witnesses, a sergeant first class (E7), a staff sergeant (E6), and a sergeant (E5). He states that, "With proper witness preparation, it is my firmly held belief that they would have been good sentencing witnesses for SPC Boone." Mr. Neeves states categorically that he and Mr. Woodward never discussed these witness notes, and that the two defense attorneys did not have any substantive conversations about the case prior to trial.

Mr. Neeves also describes the appellant's uncle, Air Force Major (MAJ) Roundtree, as "intelligent, articulate and insightful" and opines that MAJ Roundtree "would have been an excellent sentencing witness for SPC Boone." [2]

Because there was little or no communication before and during trial between Woodward and himself, Mr. Neeves says he can provide no explanation why any of these witnesses were not called, and "cannot justify the lack of a meaningful presentencing case . . . especially when there were witnesses who were available and who could have had a favorable impact."

Mr. Woodward asserts in his five-paragraph, generalized affidavit that on at least two occasions he requested the appellant to provide the names of potential sentencing witnesses and the appellant failed to do so. He could not recall if Mr. Neeves interviewed any sentencing witnesses and could not specifically recall discussing the subject with Mr. Neeves. Mr. Woodward makes no mention of the notes from Mr. Neeves regarding the three noncommissioned officers. Mr. Woodward also asserts that the appellant never informed him that the mother and uncle were willing to testify. Moreover, Mr. Woodward asserts that the appellant specifically stated that he did not want his mother present at the trial. Mr. Woodward admits he himself did not seek out any sentencing witnesses. He asserts that his sentencing strategy was to minimize the adjudged confinement.[3] He says that he advised the appellant against testifying on sentencing because "[g]iven Specialist Boone's attitude and demeanor when he testified on the merits of the case, . . . in my opinion it would be counter-productive for him to take the stand again."

## III. Standards for Determining Counsel Performance

The Supreme Court, in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), provides the standard for measuring claims of ineffectiveness of counsel. This standard has been adopted for

---

**2.** In affidavits submitted to this court in 1993 and to the Court of Appeals for the Armed Forces in 1994, MAJ Roundtree indicated that while he never met Mr. Woodward face-to-face prior to the trial, he had several telephonic discussions in December 1991 and January 1992 with Mr. Woodward regarding the case. Major Roundtree asserts that Mr. Woodward was familiar with his familial relationship to the appellant, that he was paying Mr. Woodward's legal fees on behalf of the appellant, and that Mr. Woodward never

asked him to testify. MAJ Roundtree also expressed in the 1994 affidavit his willingness to testify, and summarized his potential testimony concerning the appellant's upbringing.

**3.** Appellate defense counsel argue that Mr. Woodward's stated strategy of minimizing the confinement is not a strategy at all but is merely a goal. We agree.

courts-martial. *United States v. Sanders,* 37 M.J. 116 (C.M.A.1993); *United States v. Scott,* 24 M.J. 186 (C.M.A.1987). Under *Strickland,* the appellant must show that his defense counsel's performance was deficient and that the deficient performance prejudiced the defense so as to deprive the appellant of a fair trial, that is, a trial whose result is reliable. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *United States v. Curtis,* 44 M.J. 106, 119 (1996). "[T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (quoting *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 2046–47, 80 L.Ed.2d 657 (1984)).

■ Under *Strickland,* the proper standard for judging attorney performance is that of reasonably effective assistance, taking into account all of the circumstances, using an objective standard of reasonableness. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064–65. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691, 104 S.Ct. at 2066. "The defense must adopt 'a coherent theme' and strategy which is important for the findings as well as the sentencing portion of the proceedings." *Curtis,* 44 M.J. at 120 (quoting *United States v. Woolheater,* 40 M.J. 170, 173 (C.M.A.1994)). Our scrutiny must be deferential and untinged by the distorting effects of hindsight. There is a "strong presumption" that counsel's performance falls within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. "To overcome that strong presumption on appeal, appellant must present sufficient evidence that, when considered in light of the entire appellate record, establishes a valid claim that (1) counsel's conduct was not objectively reasonable under prevailing professional norms; and, (2) there is a reasonable probability that, but for counsel's unprofessional error, the findings or sentence would have been different." *United States v. Crum,* 38 M.J. 663, 665–66 (A.C.M.R.1993), *aff'd,* 43 M.J. 230 (1995)(summary disposition) [footnote omitted]. Errors of professional judgment must be "so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. "Counsel[s'] [performance] is not required to be error-free." *United States v. Brown,* 33 M.J. 743, 745 (A.C.M.R.1991), *pet. denied,* 35 M.J. 252 (C.M.A.1992); *United States v. Barnard,* 32 M.J. 530 (A.F.C.M.R.1990), *pet. denied,* 33 M.J. 484 (C.M.A.1991).

■ In determining prejudice "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695, 104 S.Ct. at 2069. Moreover, our analysis must focus on more than mere outcome determination, but must look to whether the result of the proceeding was fundamentally unfair or unreliable. *See Lockhart,* 506 U.S. at 369, 113 S.Ct. at 842–43; *Curtis,* 44 M.J. at 119; *United States v. Ingham,* 42 M.J. 218, 223 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 745, 133 L.Ed.2d 693 (1996).

■ Our standard in reviewing issues of ineffective assistance of counsel is "highly deferential." *Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986); *United States v. McCastle,* 43 M.J. 438, 440 (1996), *modified,* 44 M.J. 77 (1996), *cert. denied,* —— U.S. ——, 116 S.Ct. 2504, 135 L.Ed.2d 194 (1996).

## IV. Analysis of Appellant's Assertions

In our original opinion, we stated that the appellant had "not provided us with information concerning witnesses who were willing and able to testify on his behalf *and* who were known or should have been known to Mr. W[oodward]." *Boone,* 39 M.J. at 545. The recent affidavits of Mr. Woodward and Mr. Neeves have now provided a clearer picture regarding potential sentencing wit-

nesses and counsel's sentencing efforts. We find Mr. Neeves' detailed affidavit credible, and where there are conflicts with Mr. Woodward's affidavit, we accept Mr. Neeves' factual version as accurate.

 ·Having reviewed all the available affidavits and other documents admitted by this court as appellate exhibits, and having reviewed the record of proceedings and the briefs of counsel, we find that only Mr. Neeves did any investigation concerning sentencing witnesses and that he turned his notes regarding potential sentencing witnesses over to Mr. Woodward, who either overlooked or ignored them. Mr. Woodward admits to no sentencing investigation of his own. We find that Mr. Woodward, either individually or in combination with Mr. Neeves, failed to provide the appellant with effective assistance of counsel during the sentencing phase of trial.[4] But that does not end our inquiry. In order for this court to grant relief, the deficient performance must be prejudicial to the appellant.

We have reviewed Mr. Neeves' notes concerning the three noncommissioned officers. The three individuals rated the appellant as an average soldier in his efficiency, attitude, and performance of duties. While those three potential witnesses would not have portrayed the appellant as an outstanding soldier, they each felt that he had potential for rehabilitation. They appear to us to have some value as sentencing witnesses. Moreover, because Mr. Neeves actually saw and heard the noncommissioned officers, we recognize his greater opportunity and ability to form a judgment about their potential as sentencing witnesses.

We accept Mr. Woodward's statement that the appellant expressed to him that the appellant did not wish his mother to be present at trial.

We believe that the testimony of MAJ Roundtree may have been helpful to the sentencing case. If indeed Mr. Woodward's stated goal was to minimize the confinement, we fail to see why this witness was not called. MAJ Roundtree was known to Mr. Woodward through numerous telephone conversations, and MAJ Roundtree was ready, willing, and able to testify favorably on the appellant's behalf.[5] Major Roundtree would have testified that he had known the appellant since birth and had maintained frequent contacts with him since the appellant joined the Army. He would have testified about the appellant's family background, upbringing, attitude toward the Army, and the appellant's normally peaceful nature.

After reviewing the entire record, including all the evidence presented to us on the issue of ineffective assistance of counsel, we have insufficient faith in the sentencing proceeding to affirm the sentence here. There is, we believe, a reasonable probability that the sentence would have been different but for counsel's performance, and that probability is sufficient for us to question the reliability of and to undermine our confidence in the sentencing proceeding. To cure the error, we may authorize a rehearing on sentence; or, we can reassess the sentence ourselves. *United States v. Poole*, 26 M.J. 272 (C.M.A. 1988). We may reassess the sentence if, and only if, we can determine that "the accused's sentence would have been at least of a certain magnitude." *United States v. Sales*, 22 M.J. 305, 307 and 308 (C.M.A.1986); *United States v. Jones*, 39 M.J. 315, 317 (C.M.A. 1994); *see also United States v. Peoples*, 29 M.J. 426 (C.M.A.1990).

We are confident in this particular case, after reviewing the entire record, that we can determine that the accused's sentence, absent the error discussed in this opinion, would have been at least a dishonorable discharge, confinement for forty years, forfeiture of all pay and allowances, and reduction

---

**4.** We recognize the delicate situation military defense counsel confront when the client exercises his right to civilian defense counsel and also retains military counsel on the case. However, this case demonstrates why military counsel must not be lulled into inactivity and complete deference to their civilian counterpart. The presence of civilian counsel does not relieve military defense counsel of their professional and ethical obligations toward their client.

**5.** Major Roundtree was not present at the appellant's trial. However, MAJ Roundtree, by affidavit, asserts that he could and would have arranged to travel to the trial from California on temporary duty or on leave at his own expense.

to Private E1. In reaching this conclusion, we have considered the extreme seriousness of the appellant's predatory sexual attacks on three different women, balanced against the probable value of those sentencing witnesses identified by the appellant, had they testified on the appellant's behalf.

Finally, we note that the appellant seeks to raise the same assertions of error which he personally raised during our original review of this case and which he raised in the Court of Appeals for the Armed Forces. We see no need to revisit those issues pertaining to the findings which have already been considered and rejected by this court and by our superior court. We find no merit in the appellant's sentencing and post-trial issues.

The findings of guilty, having been previously affirmed by this court and not having been set aside by the Court of Appeals for the Armed Forces, remain in effect. Reassessing the sentence on the basis of the error noted and the entire record, this court affirms so much of the sentence as provides for a dishonorable discharge, confinement for forty years, forfeiture of all pay and allowances, and reduction to Private E1.

Judge JOHNSTON and Judge ECKER, concur.