UNITED STATES, Appellee,

v.

Stephen E. BOONE, Jr., Specialist,
U.S. Army, Appellant.

No. 94–0796.
Crim.App. No. 9200231.

U.S. Court of Appeals for
the Armed Forces.

Argued March 23, 1998.

Decided Sept. 29, 1998.

For Appellant: *Richard T. McNeil* and *Captain Paul Fiorino* (both argued).

For Appellee: *Captain Mary E. Braisted* (argued); *Colonel Joseph E. Ross, Lieuten-*

*ant Colonel Frederic L. Borch, III,* and *Captain Elizabeth N. Porras* (on brief).

## Opinion of the Court

RIPPLE, Circuit Judge: [1]

Specialist Stephen E. Boone, Jr., was convicted by a general court-martial, consisting of officers and enlisted members, of attempted rape and two specifications of rape, in violation of Articles 80 and 120, Uniform Code of Military Justice, 10 USC §§ 880 and 920, respectively. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for 60 years, total forfeitures, and reduction to Private E–1, but suspended for one year the confinement in excess of 50 years. On appeal, Specialist Boone's principal issue alleged that he was denied his Sixth Amendment right to counsel because his detailed military defense counsel and civilian defense counsel provided ineffective assistance.

## I

## BACKGROUND

The Court of Military Review [2] affirmed the conviction and the sentence. *See United States v. Boone,* 39 MJ 541, 545 (ACMR 1994). It held that Specialist Boone had failed to meet his burden of showing that his military and civilian defense counsel, individually and as a defense team, were constitutionally ineffective. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). On August 25, 1995, this Court set aside the decision of the service appellate court with respect to the sentence. *See United States v. Boone,* 42 MJ 308, 314 (1995). The Court noted that the defense case on sentencing had consisted solely of

Specialist Boone's unsworn statement. The Court particularly pointed out that no one from Specialist Boone's family, from his chain of command, or from among his fellow soldiers was called as witnesses on his behalf in extenuation and mitigation. *See id.* at 312. Because we could find no explanation and could discern no tactical reason from the record for the meager defense presentation during the court-martial, we set aside the judgment as to sentence and returned the case to the Judge Advocate General of the Army for remand to the Court of Criminal Appeals for further factfinding regarding the strategy of the defense at sentencing. We noted that, if the factual issues could not be resolved by affidavits, a hearing under *United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967) (per curiam), could be ordered. We further noted that, in the event that further factfinding was impracticable, a rehearing on sentencing could be ordered. *See Boone,* 42 MJ at 314.

In the course of our earlier decision, we noted that Specialist Boone had furnished affidavits stating that his mother and his uncle, an Air Force career officer, were willing to attest to his family background and good character. *See id.* at 313. We observed that Specialist Boone apparently had served honorably in Germany and in Saudi Arabia, and, until this crime, had no record of disciplinary action while in the Armed Forces. We noted that the lack of defense evidence was specifically cited in the staff judge advocate's recommendation to the convening authority regarding sentence appropriateness. *Id.* at 313–14. Finally, we took note, as did the Court of Military Review (39 MJ at 542), that at some point after trial,

---

1. Judge Kenneth F. Ripple of the United States Court of Appeals for the Seventh Circuit, sitting by designation pursuant to Article 142(f), Uniform Code of Military Justice, 10 USC § 942(f).

2. On October 5, 1994, the National Defense Authorization Act for Fiscal Year 1995, Pub.L. No. 103–337, § 924(b)(1), 108 Stat. 2663, 2831 (1994), changed the name of the military appellate courts. Each Court of Military Review is now designated as a Court of Criminal Appeals. This new change was codified at 10 USC § 866 n. (1995). Previously, in the Military Justice Act

of 1968, Pub.L. No. 90–632, 82 Stat. 1335, 1341 (1968), Congress had redesignated the Boards of Review under Article 66 as Courts of Military Review and the members of the new court as appellate military judges. The legislative history of the 1968 Act states that the name redesignation "was designed 'to improve and enhance the stature and independent status of these appellate bodies.' S.Rep. No. 1601, 90th Cong., 2d Sess. 15, *reprinted in* 1968 U.S.C.C.A.N. 4515." *United States v. Mitchell,* 37 MJ 903, 907 (NMCMR 1993).

Specialist Boone discharged his civilian defense counsel and filed a formal complaint against him with the State Bar of Texas. The State Bar of Texas issued a public reprimand to the civilian counsel for "neglecting a legal matter entrusted to him." 42 MJ at 312.

In compliance with our mandate, the Court of Criminal Appeals ordered the civilian defense counsel and the military defense counsel each to file an affidavit addressing questions about their performance in the preparation for and during the sentencing phase of trial. *See United States v. Boone,* 44 MJ 742, 743–44 (Army Ct.Crim.App.1996). Because the civilian defense counsel was primarily responsible for presentation of the case, he also was ordered to answer a series of specific questions about his activities regarding the sentencing. In response, the military defense counsel filed an affidavit in which he stated that he had interviewed three potential witnesses for sentencing and that he had turned over his interview notes to the civilian defense counsel. Military defense counsel also attached to his affidavit his notes on the three prospective sentencing witnesses: a sergeant first class (E–7), a staff sergeant (E–6) and a sergeant (E–5). The military defense counsel further stated his belief that, with proper witness preparation, these individuals would have been good witnesses for Specialist Boone at sentencing. In addition to these military witnesses from Specialist Boone's chain of command, the military defense counsel described Specialist Boone's uncle, Air Force Major Archie Roundtree. In the military defense counsel's view, the Major was "intelligent, articulate and insightful" and "would have been an excellent sentencing witness." 44 MJ at 744.

The civilian defense counsel submitted a five-paragraph affidavit in which he said that he had requested, on at least two occasions, that Specialist Boone provide him with the names of potential witnesses for the sentencing phase and that Specialist Boone had failed to do so. The civilian defense counsel denied ever having discussed these matters with the military defense counsel. He could not recall whether military defense counsel had interviewed any sentencing witnesses and could not recall having discussed the subject with the military defense counsel. The civilian defense counsel did recall, however, that the accused had indicated that he did not want his mother present at the trial. He asserted that his sentencing strategy was to minimize the adjudged confinement, but admitted that he did not seek out any witnesses. He indicated that he advised Specialist Boone against testifying at sentencing because the accused's attitude and demeanor, when testifying on the merits, had been counter-productive.

The Court of Criminal Appeals took the view that these recent affidavits from the civilian defense counsel and the military defense counsel had provided it with a clearer picture regarding the potential sentencing witnesses and counsel's sentencing efforts. *See* 44 MJ at 745–46. The court held that it found military defense counsel's "detailed affidavit credible, and where there are conflicts with [civilian defense counsel]'s affidavit we accept [military defense counsel's] factual version as accurate." *Id.* at 746. On the basis of this new information, the Court of Criminal Appeals determined that the defense effort did amount to the ineffective assistance of counsel during the sentencing phase of the trial. *See id.* The court then went on to evaluate the effect of counsel's substandard performance. It determined that the three noncommissioned officers' testimony would have been of some value at sentencing. Notably, the court remarked, however, that, because the military defense counsel had actually seen and heard the witnesses, he had a greater opportunity and ability to judge their potential as sentencing witnesses than did the Court of Criminal Appeals. The court accepted civilian defense counsel's statement that Specialist Boone had expressed a desire not to have his mother at trial.

With respect to the testimony of Major Roundtree, the court concluded that his testimony also might have been helpful. If, indeed, civilian counsel's "goal was to minimize the confinement," reasoned the Court of Criminal Appeals, "we fail to see why this witness was not called." *Id.* The court

noted that the Major would have testified that he had known the accused since birth and had maintained frequent contacts with him since Specialist Boone had joined the Army. He could have testified about the accused's family background, upbringing, attitude toward the Army and his normally peaceful nature. *See id.* On the basis of this information, the Court of Criminal Appeals concluded that there was "a reasonable probability that the sentence would have been different but for counsel's performance, and that probability is sufficient for us to question the reliability of and to undermine our confidence in the sentencing proceeding." *Id.*

Noting that it had the option of either authorizing a rehearing on sentence or reassessing the sentence itself, the Court of Criminal Appeals determined that it ought to reassess the sentence itself. It decided upon this course because it believed that it could determine that the accused's sentence, absent the error, would have been at least a dishonorable discharge, confinement for forty years, forfeiture of all pay and allowances and reduction to Private E–1. The court explicitly noted that, in reaching this conclusion, it had considered the extreme seriousness of Specialist Boone's predatory sexual attacks on three different women and had balanced the seriousness of the offenses against the evidence that would have been proffered on his behalf. Accordingly, the court reassessed the sentence on the basis of the error noted and the entire record, and affirmed "so much of the sentence as provides for a dishonorable discharge, confinement for forty years, forfeiture of all pay and allowances, and reduction to Private E–1." *Id.* at 747.

On October 27, 1997, this Court granted the petition for grant of review on the following issue raised by appellate defense counsel:

WHETHER THE ARMY COURT ABUSED ITS DISCRETION IN REASSESSING THE SENTENCE WITHOUT ORDERING A REHEARING WHERE APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AT THE SENTENCING PHASE OF THE TRIAL.

We also specified the following issue:

WHETHER A COURT OF CRIMINAL APPEALS, AFTER HOLDING THAT AN ACCUSED WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT THE SENTENCING STAGE OF A COURT–MARTIAL, HAS THE LAWFUL POWER TO REASSESS THE SENTENCE AS A REMEDY RATHER THAN ORDER A SENTENCE REHEARING.

II

DISCUSSION

A. Governing Principles

Because this case presents an issue of statutory construction, we must begin with the text of the statute. Article 66(c), Uniform Code of Military Justice, 10 USC § 866(c) (1994), states in pertinent part:

In a case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.

This subsection created in what is now the Court of Criminal Appeals [3] a unique authority that is the product of the evolution of military justice in the United States. When Congress determined, at the end of World War II, to improve the administration of justice in the Armed Forces of the United States, it perceived a need to provide for an intermediate appellate tribunal that would

---

3. In 1950 Congress created the Board of Review, 64 Stat. 128. In 1968 the name was changed to Court of Military Review. 82 Stat. 1341. In 1994 the name was changed to Court of Criminal Appeals. *See* n. 2, *supra*.

have the high responsibility of ensuring uniformity and evenhandedness, values that could not be assured if final decision making were left at the local command level.[4] To ensure that the members of these service appellate courts had the tools necessary to carry out their responsibility, Congress gave them an authority rarely if ever seen in other appellate courts. The members of these courts were to have plenary authority—as well as the responsibility—to affirm the findings and sentence of a court-martial within their jurisdiction only if their review of the record convinced them that the determinations reached by the court-martial and the convening authority were, under the appropriate standards of proof, correct in law and fact.

In this case, we must decide the scope of the authority given to the Courts of Criminal Appeals when they are confronted with an allegation that trial defense counsel has provided constitutionally deficient representation during the court-martial sentencing process. In order to assess properly the many considerations that bear on a resolution of this problem, we first shall set forth, at least in summary fashion, the principles already established in these areas of law.

### 1.

This Court has considered the circumstances under which, in the exercise of its extraordinary power and responsibility under Article 66(c), the now-Court of Criminal Appeals can supplement the record that comes to it from the court-martial.

In *United States v. Healy*, 26 MJ 394 (1988), this Court considered whether the then-Court of Military Review was restricted to the record of trial before the court-martial and the convening authority or whether it could consider additional information—documents filed for clemency purposes—in determining sentence appropriateness. There was no claim of ineffective assistance of counsel in *Healy*. The issue before that court was whether appellate defense counsel could file, in the Court of Military Review, letters

seeking clemency and reduction of confinement for his client. This Court distinguished between the role of the Courts of Military Review to "do justice" and the discretionary power of the convening authority to grant mercy. It then affirmed the denial of the appellant's motion to file the clemency materials. Stated precisely, we decided that the Court of Military Review was under no *duty* to receive the materials, but did not decide that the Court of Military Review *must not* receive evidence bearing on clemency or sentence appropriateness after the convening authority has acted. *See id.* at 397. We noted that the "entire record" of trial " 'encompasse[d] the transcript, the documentary exhibits, and the allied papers,' as well as any appellate briefs, including those submitted by trial defense counsel pursuant to Article 38(c), Uniform Code of Military Justice, 10 USC § 838(c)." *Id.* at 395 (quoting *United States v. Castleman*, 10 MJ 750, 750–51 (AFCMR) (per curiam), *pet. denied sub nom. United States v. Dunkin*, 12 MJ 14 (1981)). We further pointed out that the "information submitted to the convening authority for clemency purposes will in some instances be part of the 'record' which is considered by the Court of Military Review in determining sentence appropriateness." *Id.* at 396. However, the Code does not explicitly provide for further supplementation:

> Although the Code provides a means after trial for an accused to get clemency-oriented information into the "record" prior to action by the convening authority and thereby can bring this information to the attention of the Court of Military Review, the Code does not provide an opportunity for the accused and his counsel to supplement the "record" after the convening authority has acted. We infer from this omission that Congress never intended that a Court of Military Review would be under any duty to receive additional information on sentencing after the convening authority had acted.

**4.** *See Jackson v. Taylor*, 353 U.S. 569, 577 & n. 8, 77 S.Ct. 1027, 1 L.Ed.2d 1045 (1957); *see also* the legislative history of the Uniform Code of Military Justice, Pub.L. No. 81–506, S.Rep. No. 486, 81st Cong.2d Sess. 28 (1950), *reprinted in* 1950 U.S.C.C.A.N. 2222, 2253.

*Id.* at 396–97. Thus, we concluded that the intermediate appellate court "has no duty to receive information or data that purports to be relevant only to clemency and that, after the convening authority has acted, the Code provides no way for bringing to the attention of the Court of Military Review information that purportedly bears even on sentence appropriateness." *Id.* at 397.

Although we held in *Healy* that the Court of Military Review is not required to receive supplementary materials, this decision lives in peace with our holding that consideration of sworn affidavits from counsel is a proper factfinding act of a Court of Criminal Appeals. We have recognized that there are legitimate and salutary reasons for the now-Court of Criminal Appeals to have the discretion to obtain evidence by affidavit, testimony, stipulation, or a factfinding hearing, as it deems appropriate. *See United States v. Lewis,* 42 MJ 1, 6 (1995).[5] Indeed, it has the authority to compel production of such evidence. *See id.* at 5.

Nevertheless, we have also recognized that this discretion to receive and consider affidavits is limited by Article 66(c). This ·Court focused on this limitation on the scope of a service appellate court's factfinding power in *United States v. Ginn,* 47 MJ 236 (1997). In that case, we reviewed the use, by the Army Court of Criminal Appeals, of affidavits from Ginn, from a sergeant who was the father of one of the alleged victims, from defense counsel and from trial counsel, as well as a signed statement from one of the alleged victims. The affidavits had been gathered for that court's consideration of Ginn's claim that he had received ineffective assistance of counsel. This Court made clear in *Ginn* that the statutory language of Article 66(c) "clearly indicates that Congress intended a Court of Criminal Appeals to act as factfinder in an appellate-review capacity and not in the first instance as a trial court." *Id.* at 242. We

noted that the service appellate court has "factfinding power on collateral claims" but that it is not authorized "to determine innocence on the basis of evidence not presented at trial." *Id.* (citing cases). Likewise, the service appellate court has "discretion to consider affidavits on the need for a hearing," but that discretion "does not permit us to ignore the limitations on factfinding found in Article 66." *Id.* This Court concluded that, although Article 66(c) grants a service appellate court the discretion to consider affidavits, it does not authorize that court "to decide disputed questions of fact pertaining to a post-trial claim, solely or in part on the basis of conflicting affidavits submitted by the parties." *Id.* at 243. Indeed, we noted that this mistrust of resolving controverted issues of fact had a pedigree of long standing in the jurisprudence of this Court. *See id.*; *see also United States v. Perez,* 18 USCMA 24, 26, 39 CMR 24 (1968) (requiring a hearing to resolve differing accounts from military counsel and his client about the latter's desire to retain civilian counsel); *United States v. Allen,* 8 USCMA 504, 508, 25 CMR 8, 12 (1957) (requiring a hearing to reconcile conflicting affidavit submissions with respect to the competence of counsel).

In *Ginn,* because the Court of Criminal Appeals expressly had stated that it was using its Article 66 factfinding powers to consider the affidavits and then made express findings of fact based on those affidavits, we determined that it had committed legal error under Article 66(c). *See* 47 MJ at 243. However, we also concluded that the error was harmless because the accused could show no prejudice. *See id.* at 246–48. Indeed, we commented that, "[i]n most instances in which an appellant files an affidavit in the Court of Criminal Appeals making a claim such as ineffective assistance of counsel at trial, the authority of the Court to decide that legal issue without further proceedings should be clear." *Id.* at 248. We

---

5. In *Lewis,* the Army Court of Military Review had required military and civilian counsel to file affidavits with the court concerning the accused's allegations of their ineffectiveness as trial defense counsel. Counsel filed a motion to stay in which they argued that they should not be so required. The service appellate court accepted their motion as the "functional equivalent" of an affidavit and resolved the issue against the appellant without requiring the affidavits. *See* 42 MJ at 3. We held that it was error to treat that motion as the functional equivalent of an affidavit, but that the error was harmless. *See id.* at 4.

established the following principles to guide the Courts of Criminal Appeals in deciding when a hearing ought to be held in the wake of the filing of affidavits:

First, if the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor, the claim may be rejected on that basis.

Second, if the affidavit does not set forth specific facts but consists instead of speculative or conclusory observations, the claim may be rejected on that basis.

Third, if the affidavit is factually adequate on its face to state a claim of legal error and the Government either does not contest the relevant facts or offers an affidavit that expressly agrees with those facts, the court can proceed to decide the legal issue on the basis of those uncontroverted facts.

Fourth, if the affidavit is factually adequate on its face but the appellate filings and the record as a whole "compellingly demonstrate" the improbability of those facts, the Court may discount those factual assertions and decide the legal issue.

Fifth, when an appellate claim of ineffective representation contradicts a matter that is within the record of a guilty plea, an appellate court may decide the issue on the basis of the appellate file and record (including the admissions made in the plea inquiry at trial and appellant's expression of satisfaction with counsel at trial) unless the appellant sets forth facts that would rationally explain why he would have made such statements at trial but not upon appeal.

Sixth, the Court of Criminal Appeals is required to order a factfinding hearing only when the above-stated circumstances are not met. In such circumstances the court must remand the case to the trial level for a *DuBay* proceeding. During appellate review of the *DuBay* proceeding, the court may exercise its Article 66 factfinding power and decide the legal issue.

47 MJ at 248.

2.

■■■ We next turn to the established principles that govern the correction of sentencing error by the Court of Criminal Appeals. As a general proposition, when the Court of Criminal Appeals decides that error has been committed in the sentencing process, it may conclude that it cannot "reliably determine what sentence would have been imposed at the trial level if the error had not occurred," *United States v. Sales*, 22 MJ 305, 307 (CMA 1986), and order a rehearing on the sentence.[6] Or it may conclude that, in the absence of error, the sentence "would have been at least of a certain magnitude" and reassess the sentence accordingly. *Id.*[7]

6. *See, e.g., United States v. Taylor*, 47 MJ 322, 325–26 (1997) (ordering remand to consider if rehearing needed because this Court was unable to determine whether service appellate court improperly considered victim's testimony); *United States v. Thompson*, 41 MJ 895, 899 (Army Ct. Crim.App.1995) (authorizing sentence rehearing because court could not reliably determine what sentence would have been imposed had sentencing error not occurred); *United States v. Irons*, 34 MJ 807, 810 (NMCMR 1992) (authorizing sentence rehearing because court could not reliably determine that no sentencing error concerning selection of a court member had occurred or what sentence would have been imposed with no error); *United States v. Peoples*, 29 MJ 426, 429 (CMA 1990) (reversing sentence decision on ground Court could not conclude that Court of Military Review properly reassessed sentence, authorizing rehearing on sentence or approval of sentence without appellant's bad-conduct discharge); *United States v. Dukes*, 5 MJ 71, 73 (CMA 1978) (authorizing rehearing after it was clear that reception of inadmissible evidence resulted in more severe sentence than would have been imposed).

7. In *Sales*, this Court held that, when the military judge had fixed the maximum confinement on the erroneous assumption that the findings were not multiplicious, the Court of Military Review could reassess the sentence without a rehearing. *See* 22 MJ at 307, 308; *see also United States v. Cook*, 46 MJ 37, 40 (1997) (holding that the Court of Criminal Appeals did not abuse its discretion in reassessing the sentence when the accused had not been given opportunity to respond to new material transmitted to the convening authority by the staff judge advocate); *United States v. Hennis*, 40 MJ 865, 870 (AFCMR 1994) (finding two specifications multiplicious, reassessing sentence and finding reassessed sentence appropriate); *United States v. Broussard*, 35 MJ 665, 669, 671 (ACMR 1992) (finding convictions for two offenses to be multiplicious because one was lesser included offense of the other, reassess-

In exercising this latter option, reassessing a sentence without a remand, the now-Court of Criminal Appeals not only must "assure that the sentence is appropriate in relation to the affirmed findings of guilty, but also ... must assure that the sentence is no greater than that which would have been imposed if the prejudicial error had not been committed." *Id.* at 308 (quoting *United States v. Suzuki,* 20 MJ 248, 249 (CMA 1985)). If the court can determine that "the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error." *Id.* "The standard for reassessment is not what would be imposed at a rehearing but what would have been imposed at the original trial absent the error." *United States v. Taylor,* 47 MJ 322, 325 (1997).[8] If the error at trial was of constitutional magnitude, the now-Court of Criminal Appeals must be persuaded beyond a reasonable doubt that its reassessment has rendered that constitutional deprivation harmless. *See Sales,* 22 MJ at 307; *see generally Chapman v. California,* 386 U.S. 18, 21–24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

In *United States v. Peoples,* 29 MJ 426 (1990), we stated:

We have great confidence in the ability of the Court of Military Review to reassess sentences in order to purge the effects of prejudicial error at trial. Furthermore, we are well aware that it is more expeditious and less expensive for the Court of Military Review to reassess the sentence than to order a rehearing on sentence at the trial level.

*Id.* at 429; *see also United States v. Cook,* 46 MJ 37, 39 (1997) (reviewing the breadth of remedial appellate authority and expressing

confidence that the "experienced and mature judges of the Courts of Criminal Appeals are fully capable in a given case of determining whether an error is harmless, whether corrective action should be taken by the Court of Criminal Appeals, or whether the case should be returned to the convening authority for new action"); *see generally Jackson v. Taylor,* 353 U.S. 569, 579, 77 S.Ct. 1027, 1 L.Ed.2d 1045 (1957) (noting that Congress enacted Article 66(c) "because the nature of a court-martial proceeding makes it impractical and unfeasible to remand for the purpose of sentencing alone"); *United States v. Miller,* 10 USCMA 296, 298–99, 27 CMR 370, 372–73 (1959) (rehearing may be "limited to the sentence only").

Nevertheless, if the now-Court of Criminal Appeals concludes that it cannot determine what the accused's sentence would have been in the absence of the error, it must order a rehearing. *See United States v. Jones,* 39 MJ 315, 317 (CMA 1994). We traditionally have left the determination as to whether the sentence is appropriate to the now-Court of Criminal Appeals. *See United States v. Poole,* 26 MJ 272, 274 (CMA 1988). The decision of the now-Court of Criminal Appeals is disturbed only to " 'prevent obvious miscarriages of justice or abuses of discretion.' " *Jones,* 39 MJ at 317 (quoting *United States v. Dukes,* 5 MJ 71, 73 (CMA 1978)). In that review, we have emphasized that our task must be to ensure that the sentence is both appropriate to the affirmed findings of guilty and no greater than that which would have been imposed by the court-martial if the prejudicial error had not been committed. *See Poole,* 26 MJ at 274–75. Only in this way, we have remarked, " 'can

---

ing sentence to cure error and affirming sentence); *cf. United States v. Scott,* 42 MJ 457, 460 (1995) (affirming Army court's reassessment after determining that aggravating evidence before the sentencing authority was admissible and consideration of it was proper); *United States v. Jones,* 39 MJ 315, 318 (CMA 1994) (affirming reassessment, after one specification was dismissed and two others were affirmed, on grounds the maximum sentence did not change, sentence was well within the maximum for the remaining offenses, and appellant expressed no remorse); *United States v. Poole,* 26 MJ 272,

274–75 (CMA 1988) (concluding appellant's pleas of guilty were provident, despite misadvice from military judge, and Court of Military Review's reassessment of sentence was not an abuse of discretion).

8. As a general proposition, this Court reviews a service appellate court's reassessment of a sentence under an abuse of discretion standard; we shall disturb the reassessment only in order to " 'prevent obvious miscarriages of justice or abuses of discretion.' " *Taylor,* 47 MJ at 325 (quoting *Jones,* 39 MJ at 317).

the requirements of Article 59(a), UCMJ, 10 U.S.C. § 859(a), be reconciled with the Code provisions that findings and sentence be rendered by the court-martial. . . .' " *Id.* at 275 (quoting *Suzuki*, 20 MJ at 249).

### 3.

The ultimate issue before us is how constitutionally ineffective assistance of counsel at sentencing, once discovered, can be remedied. We therefore must apply the principles set forth in the preceding two subsections in the context of the ineffectiveness of Boone's counsel at sentencing. Accordingly, before proceeding to a resolution of this case, we review, briefly, the standards that govern the analysis of ineffective assistance of counsel issues.

■ When faced with an allegation that counsel has been ineffective, the applicable standard of adjudication is the now familiar two-step inquiry of *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.[9] This standard requires that the accused must demonstrate that his counsel was deficient and that the deficient performance prejudiced the defense

so as to deprive him of a fair trial. As the Court of Criminal Appeals noted in this case, an accused is deprived of a fair trial when the court-martial proceeding produces a result that is not reliable. *See United States v. Boone,* 44 MJ 742, 745 (Army Ct.Crim.App. 1996).

■ Ineffective assistance of counsel at the sentencing process can occur in several different ways. Perhaps the most frequently encountered situation is when counsel either fails to investigate adequately the possibility of evidence that would be of value to the accused in presenting a case in extenuation and mitigation[10] or, having discovered such evidence, neglects to introduce that evidence before the court-martial.[11] Notably, in these situations, the record of trial will not include the evidence that counsel should have presented, but did not, at the court-martial; that evidence was never introduced.

■ There are, however, other possible situations in which counsel can be ineffective at the sentencing stage. Counsel may neglect to object to a government submission unreasonably prejudicial to the accused.[12]

---

**9.** This standard is applicable to courts-martial. *See United States v. Sanders,* 37 MJ 116, 118(CMA), *cert. denied,* 510 U.S. 1010, 114 S.Ct. 600, 126 L.Ed.2d 565 (1993); *United States v. Scott,* 24 MJ 186, 187 (CMA 1987).

**10.** *See, e.g., United States v. Holt,* 33 MJ 400, 411–12 (CMA 1991) (defense counsel's failure to call witnesses or the accused, to register objections or to cross-examine government witnesses at sentencing was nonperformance which constituted ineffective assistance); *United States v. Dorsey,* 30 MJ 1156, 1160–61 (ACMR 1990) (defense counsel's failure to present favorable presentencing evidence and failure to respond to government's damaging character evidence was ineffective assistance); *United States v. Sadler,* 16 MJ 982, 982–84 (ACMR 1983) (defense counsel's failure to present any evidence in mitigation or any statement from appellant and failure to argue for appropriate sentence was ineffective assistance); *cf. United States v. Harris,* 34 MJ 297, 300–02 (CMA 1992) (defense counsel's failure to obtain and introduce character evidence raised substantial questions of effectiveness of counsel and required remand for reconsideration). *But see United States v. Morgan,* 37 MJ 407, 409–10 (CMA 1993) (defense counsel's failure to investigate or to present potentially viable insanity defense or evidence of appellant's personality disorder in mitigation was tactical decision and not ineffective assistance of counsel).

**11.** *See, e.g., United States v. Bono,* 26 MJ 240, 242 (CMA 1988) (per curiam) (defense counsel's failure to object to uncharged misconduct contained within confession, coupled with counsel's proffer of evidence harmful to appellant, was deficient representation which caused doubling of appellant's sentence; because convening authority was alerted to the error, however, the error was rendered harmless and decision could be affirmed); *cf. Scott,* 24 MJ at 191–93 (defense attorney's performance—using alibi defense but neglecting prompt investigation, admitting he did not prove "an ironclad alibi case," arguing that victim was mistaken in her identification, failing to request cautionary instruction—fell "far short of reasonable competence," required setting aside findings and sentence and authorizing rehearing).

**12.** *See, e.g., United States v. Murray,* 42 MJ 174, 178 (1995) (defense counsel's failure to attack Government's evidence, coupled with failure to present affirmative defense while admitting the acts occurred, was a "total breakdown of the adversarial process in this case" which required setting aside findings and sentence and authorizing rehearing); *Dorsey,* 30 MJ at 1160–61 (defense counsel's insufficient response to prosecution's damaging character evidence was ineffective assistance).

Or, indeed, trial defense counsel might introduce or otherwise handle the evidence so poorly as to render it useless or almost useless to the accused.[13] In these latter situations, by contrast, the trial record will disclose to the appellate court the substance of the evidence that was mishandled by the substandard performance of counsel.

## B. Application to the Case Before Us

■ We now must apply the principles set forth above to the case before us. At this stage of the litigation, the allegation of ineffective assistance of counsel focuses on the sentencing process. The Court of Criminal Appeals, acting pursuant to our earlier remand, has determined on the basis of the affidavits submitted by defense counsel that Specialist Boone's retained civilian defense counsel and his appointed military defense counsel provided constitutionally deficient assistance when they failed to present at the court-martial the testimony of several witnesses who would have testified that the accused's military performance was sufficiently commendable to permit the conclusion that he had the potential for rehabilitation. This testimony, concluded the Court of Criminal Appeals, might well have led to a lower sentence.

As a threshold matter, we pause to note that we believe that the Court of Criminal Appeals acted well within its discretion when it concluded that the adequacy of counsel could be determined on the basis of the affidavits. The experienced appellate judges of that bench were confronted with unrebutted affidavit evidence that, on its face, established that the accused had not been afforded adequate representation in his sentencing before the court-martial and that this inadequa-

cy had resulted in a sentence greater than the one he otherwise would have received. In the face of that unrebutted affidavit evidence, it was quite appropriate for the Court of Criminal Appeals to determine this issue on the basis of those affidavits. *See United States v. Ginn*, 47 MJ 236, 248 (1997) ("[I]f the affidavit is factually adequate on its face to state a claim of legal error and the Government either does not contest the relevant facts or offers an affidavit that expressly agrees with those facts, the court can proceed to decide the legal issue on the basis of those uncontroverted facts.").

■ Having determined that the *Strickland* standard had been violated, the Court of Criminal Appeals, again on the basis of the affidavits, determined that it could reassess the sentence without a remand because it was confident that " 'the accused's sentence would have been at least of a certain magnitude.' " *Boone*, 44 MJ at 746 (quoting *United States v. Sales*, 22 MJ 305, 307, 308 (CMA 1986)). The court therefore reassessed the sentence and concluded that the sentence would have included the imposition of at least a dishonorable discharge, confinement for 40 years and ancillary penalties. We think that this determination to reassess the sentence without a remand is qualitatively different from the decision that the *Strickland* standards have been violated and, consequently, cannot be fitted as easily within the criteria set forth in *Ginn*. At bottom, the fundamental difference between the two decisions is that, on this record, the issue of the adequacy of counsel under *Strickland* is based on unrebutted facts. By contrast, the determination of the sentence cannot be so easily assessed: The record simply does not contain the evidence that the misfeasance of counsel caused to be

13. *See, e.g., United States v. Ginn*, 47 MJ 236, 245–47 (1997) (defense counsel's explanation for failing to investigate known potentially exculpatory evidence once appellant admitted committing the offense was contradicted by appellant's claim he told defense counsel he did not remember committing the offense, and pled guilty after defense counsel's assurances as to strength of prosecution's case; this Court held that no post-trial evidentiary hearing was required to determine if counsel was ineffective; and guilty plea stood because appellant never claimed he would

have changed his plea); *Dorsey*, 30 MJ at 1160–61 (defense counsel's scornful dismissal of commendation documents favorable to appellant reflects ineffective assistance of counsel); *Bono*, 26 MJ at 242 (defense counsel's introduction of evidence that appellant was not amenable to rehabilitation and that his mental status did not mitigate his conduct was ineffective assistance); *Scott*, 24 MJ at 191–93 (defense counsel's poor handling of evidence necessary to alibi defense, along with other failures, was ineffective assistance).

omitted from the record. Therefore, there is no record from which the Court of Criminal Appeals, acting within its vast but circumscribed powers under Article 66(c), can determine the sentence that the court-martial would have imposed. Although the affidavits submitted by counsel state the substance of the evidence that counsel believed would be presented by the witnesses, there was no direct evidence from those whose testimony was to be evaluated. These summaries of expected testimony hardly suffice as substitutes.[14] Nor has Boone had the opportunity to develop fully his case in extenuation or in mitigation through the presentation of these witnesses or through the presentation of additional evidence. At this point, Boone has had only an opportunity to demonstrate that the omission of the testimony of certain witnesses, because of counsel's inadequacy, rendered his sentencing unconstitutional. In short, here, the record does not contain the evidence omitted by the constitutional error. Boone must have the opportunity to make the record that he did not have the opportunity to make because of the absence of the guiding hand of counsel.

We stress the narrow confines of our holding. We intend no limitation on the power of the Courts of Criminal Appeals to reassess a sentence after other legal error has been identified. For instance, our holding in no way suggests that situations such as the one in *Jackson v. Taylor*, 353 U.S. 569, 77 S.Ct. 1027, 1 L.Ed.2d 1045 (1957), must be determined by remand rather than reassessment by the Court of Criminal Appeals. There, the accused was found guilty of murder and attempted rape at his court-martial. The Board of Review, the predecessor of the Court of Criminal Appeals, reversed the murder conviction and then reassessed the sentence for the attempted rape on the basis of the record. Unlike the situation in Boone's case, the entire record in extenuation and mitigation had been made before the court-martial and was equally before the Board of Review. Nor do we suggest that a remand for resentencing is necessary in all cases in which trial defense counsel was constitutionally inadequate. As we have noted previously, there will be cases in which the evidence in extenuation and mitigation is entirely before the court but counsel has been inadequate in some other way during the sentencing process. In such a situation, the Court of Criminal Appeals will have before it the entire record in extenuation and mitigation and may be quite able to reassess the sentence without a remand. Here we deal only with a situation in which the inadequacy of counsel has resulted in the omission of evidence that, under the standards of *Strickland*, could have made a difference in the sentence imposed if it had been made a matter of record. In such instances, the Court of Criminal Appeals cannot reassess

---

**14.** The Military Rules of Evidence are applicable at sentencing, *see* Mil.R.Evid. 1101, Manual for Courts-Martial, United States (1995 ed.), but, at the discretion of the military judge, may be relaxed for the defense when it presents its evidence in extenuation or mitigation. *See United States v. Boughton*, 16 MJ 649, 649–50 (AFCMR 1983) (per curiam). Although the rules may be relaxed, however, otherwise inadmissible evidence still is not admitted at sentencing. *See United States v. Gudel*, 17 MJ 1075, 1077 (AFCMR 1984) ("While it is true that the application of the rules of evidence may be relaxed in sentencing proceedings ..., we, like the Court of Military Appeals, believe that the rules are not so relaxed as to eliminate the requirement that the government demonstrate that the proffered evidence meets generally accepted standards of relevance, materiality and reliability."). The cases indicate "that the relaxation of the Rules goes more to the question of whether the evidence is authentic and reliable." David A. Schlueter, *Military Criminal Justice: Practice and Procedure* § 16–4(B) at 721 (4th ed.1996); *see also id.* § 16–6 at 738; *United States v. Green*, 44 MJ 631, 635, 643–44 (C.G.Ct.Crim.App.1996) (concluding that military judge abused her discretion in admitting certain hearsay evidence but error was harmless); *United States v. Heard*, 35 MJ 1, 2 (CMA 1992) (holding that admission of hearsay statement during sentencing was harmless error); *United States v. Sanchez*, 26 MJ 564, 565–67 (CGCMR 1988) (concluding that admission of co-conspirator's hearsay statement at sentencing was not harmless error; reassessing sentence to render error harmless); *Gudel*, 17 MJ at 1077–78 (stating that "hearsay evidence may, under some circumstances, be admissible during sentencing proceedings because the rules are relaxed," but holding that admission of hearsay report was error because it was "too far removed from its source to have sufficient indicia of reliability"; reassessment cured error).

the sentence accurately, *see Sales,* 22 MJ at 308, because the record is not complete.

## III

## DECISION

The 1996 decision of the United States Army Court of Criminal Appeals is affirmed as to findings but reversed as to sentence.

15. Judge Sullivan recused himself from this case in his dissent to the order granting review. *See*

The sentence is set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing on the sentence affirmed by the Court of Criminal Appeals may be ordered.

Chief Judge COX and Judges[15] CRAWFORD, GIERKE, and EFFRON concur.