UNITED STATES, Appellee,

v.

Staff Sergeant Joseph M. **DOBRAVA**, United States Army, Appellant.

ARMY 20040017.

U.S. Army Court of Criminal Appeals.

31 Aug. 2006.

For Appellant: Colonel Robert D. Teetsel, JA; Lieutenant Colonel Mark Tellitocci, JA; Major Sean S. Park, JA; Lieutenant Colonel J. Michael Sawyers, JA (on brief); Colonel John T. Phelps II, JA; Major Charles A. Kuhfahl, Jr., JA (on supplemental brief).

For Appellee: Lieutenant Colonel Theresa A. Gallagher, JA; Captain Michael D. Wallace, JA; Captain Magdalena A. Przytulska, JA (on brief); Colonel Steven T. Salata, JA; Lieutenant Colonel Theresa A. Gallagher, JA; Major William J. Nelson, JA; Captain Trevor B.A. Nelson, JA (on supplemental brief).

Before SCHENCK, Senior Judge, ZOLPER, and WALBURN, Appellate Military Judges.

## OPINION OF THE COURT

ZOLPER, Judge:

On 4 January 2004, a military judge sitting as a special court-martial convicted appellant, in accordance with his pleas, of making a false statement and larceny in violation of Articles 107 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 907 and 921 [hereinafter UCMJ]. The military judge sentenced appellant to a bad-conduct discharge, confinement for five months, and reduction to Private E1. Pursuant to a pretrial agreement, the convening authority reduced appellant's sentence to confinement for three

months, but otherwise approved the adjudged sentence. The convening authority also deferred appellant's reduction in rank from 18 January 2004 until 24 February 2004 and waived automatic forfeitures for six months. This case is before the court for review under Article 66, UCMJ, 10 U.S.C. § 866.

Appellant asserts he was denied his Sixth Amendment right to effective assistance of counsel when his trial defense counsel, Captain (CPT) O, failed to call him to the stand to make an unsworn statement during the sentencing phase of his court-martial. We agree and will order a sentence rehearing.

## FACTS

During the sentencing phase of appellant's court-martial, the military judge advised appellant of his right to present evidence in extenuation and mitigation as follows:

[W]e now begin the sentencing phase of this trial. During this part of the trial you have the right to present matters in extenuation and mitigation; that is matters about the offenses or yourself which you want me to consider in deciding your sentence.

In addition to the testimony of witnesses and the offering of documentary evidence you may, yourself, testify under oath as to these matters or you may remain silent, in which case I will not draw any adverse inference from your silence.

On the other hand, if you desire, you may make an unsworn statement. Because this statement is unsworn you cannot be cross-examined by the prosecutor upon it.

However, the government can offer evidence to rebut any statement of fact contained in an unsworn statement. An unsworn statement can be made orally, in writing, or both; it can be made by you or by your counsel on your behalf or by both you and your defense counsel.

Appellant did not make any oral or written statements before CPT O rested the defense's sentencing case.

On appeal, to support his allegation of ineffective assistance of counsel, appellant submitted an undated affidavit claiming he was prepared to make an unsworn statement, but CPT O forgot to call him to testify. Specifically, appellant avers that during the prosecution's sentencing argument, CPT O looked at him and said, "oh I am sorry, I forgot to put you on for your unsworn statement." Appellant further claims he did not know how to respond to this comment.

On 9 September 2005, we ordered an affidavit from CPT O to obtain his response to the allegations. On 13 September 2005, CPT O replied to this court's order with an affidavit and several attachments.[1] He states that he and appellant decided that an unsworn statement would be important. He also states, "So, I instructed SSG Dobrava to begin working on his unsworn statement immediately ... [and] to provide me with a draft of his statement as soon as possible so that I could review it and provide constructive criticism prior to trial." Captain O's affidavit further states, in pertinent part and with added emphasis:

[D]espite my advice that [Sergeant (SSG) ] Dobrava prepare a statement, he failed to do so prior to trial. *During a break in the proceedings, SSG Dobrava began to scratch a rough statement on what I remember to be an index card-sized piece of paper. He had not put any substantial thought into the statement and we had no opportunity to discuss what he would say to the [c]ourt.* I called two mitigation witnesses during sentencing (the aforementioned [Second Lieutenant (2LT) ] Thompson and [Sergeant First Class] Gannaway) and the Government called one (CPT Worthan). All three witnesses testified quite positively for SSG Dobrava. They discussed the fact that the unit had come under fire during various operations but that there were members of SSG Do-

---

1. The affidavit included the following attachments: (1) appellant's acknowledgement of his rights, dated 14 December 2003; (2) defense counsel's email correspondence with his supervising regional defense counsel, dated 7–8 April 2004; and (3) defense counsel's email correspondence with appellant's wife, dated 14–18 December 2003, related to preparation for appellant's court-martial.

brava's squad that were alive at the time thanks to SSG Dobrava. I judged this evidence to be quite powerful and atypical of evidence that the Defense usually has to present at trial. *Therefore, a rather quick decision was made that SSG Dobrava would not offer an unsworn statement. I felt strongly that this was the best way to handle the situation because I did not want to dilute the otherwise strong mitigation evidence by having him offer a statement that lacked thought and consideration. This was essentially a tactical decision on the best way to proceed.*

. . . .

The omission of an unsworn statement from SSG Dobrava *was unplanned, but not inadvertent.*

Appellate government counsel concede that appellant wanted to make an unsworn statement, but was not given the opportunity to do so. They further concede that appellant had a right to make an unsworn statement if he so desired, and, while appellant may not have been prejudiced, given the extremely generous pretrial agreement and favorable sentencing evidence, in the interest of fairness, appellant should have been given the opportunity to make his unsworn statement. Accordingly, the government does not oppose this court granting a sentencing rehearing.

## DISCUSSION

The Sixth Amendment to the United States Constitution guarantees an accused, including those in the armed forces, the right to the "effective assistance of counsel." *United States v. Cronic,* 466 U.S. 648, 654, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *United States v. Cain,* 59 M.J. 285, 294 (C.A.A.F. 2004); *United States v. Russell,* 48 M.J. 139, 140 (C.A.A.F.1998); *see also* UCMJ art. 27, 10 U.S.C. § 827. This Constitutional right applies not only to the merits phase of trial, but to each critical stage in a criminal proceeding where substantial rights of a criminal accused may be affected. *Mempa v. Rhay,* 389 U.S. 128, 134, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); *Moore v. Michigan,* 355 U.S. 155, 160, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957); *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). The sentencing phase of a military court-martial is such a critical stage. *United States v. Alves,* 53 M.J. 286, 289 (C.A.A.F.2000).

■ We review claims of ineffective assistance of counsel *de novo. United States v. Wean,* 45 M.J. 461, 463 (C.A.A.F.1997). To establish a claim of ineffective assistance of counsel, appellant must show not only the deficiency in counsel's performance, but how that deficiency prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Edmond,* 63 M.J. 343 (C.A.A.F. 2006).

### Competency

There is a strong presumption on appellate review of counsel's competency. *United States v. Garcia,* 59 M.J. 447, 450 (C.A.A.F.2004). To determine the counsel's competency, we must determine whether counsel's conduct fell below an objective standard of reasonableness, or was outside the "wide range of professionally competent assistance." *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. Trial defense counsel are responsible for making numerous decisions in representing a client. "An attorney undoubtedly has a duty to consult with the client regarding important decisions, including questions of overarching defense strategy. That obligation, however, does not require counsel to obtain the defendant's consent to every tactical decision." *Florida v. Nixon,* 543 U.S. 175, 187, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004) (internal quotations and citations omitted).

Here, CPT O claims that the decision not to allow appellant to take the stand was a tactical one. Indeed, as Justice Harlan noted, "a lawyer may properly make a tactical determination of how to run a trial even in the face of his client's incomprehension or even explicit disapproval." *Brookhart v. Janis,* 384 U.S. 1, 8, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966) (Harlan, J., writing separately). The American Bar Association describes tactical decisions within the counsel's sole discretion as:

(b) Strategic and tactical decisions should be made by defense counsel after consultation with the client where feasible and appropriate. Such decisions include what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and what evidence should be introduced.

(c) If a disagreement on significant matters of tactics or strategy arises between defense counsel and the client, defense counsel should make a record of the circumstances, counsel's advice and reasons, and the conclusion reached. The record should be made in a manner, which protects the confidentiality of the lawyer-client relationship.

ABA STANDARDS FOR CRIMINAL JUSTICE, Standard [hereinafter ABA Standard] 4–5.2 (3d ed.1993).

Not all decisions, however, are tactical decisions within the sole discretion of the defense counsel to decide. The Supreme Court, consistent with ABA Standard 4–5.2(a), recognizes:

[C]ertain decisions regarding the exercise or waiver of basic trial rights are of such moment that they cannot be made for the defendant by a surrogate. *A defendant ... has the ultimate authority to determine whether to* plead guilty, waive a jury, *testify in his or her own behalf,* or take an appeal. Concerning those decisions, an attorney must both consult with the defendant and obtain consent to the recommended course of action.

*Nixon,* 543 U.S. at 187, 125 S.Ct. 551 (internal quotations and citations omitted) (emphasis added).

■ Our superior court has reiterated that the "decision to make an unsworn statement is personal to the accused." *United States v. Marcum,* 60 M.J. 198, 209 (C.A.A.F.2004). In *Marcum,* the appellant went absent without leave after arraignment. When Marcum was tried in absentia, his trial defense counsel, without appellant's permission, submitted an unsworn statement, written by appellant and protected by the attorney-client privilege. Not only was the trial defense counsel not authorized to use this document, but the

decision as to whether to present an unsworn statement was personal to the accused. *Id.* The court held, "if an accused is absent without leave his right to make an unsworn statement is forfeited unless prior to his absence he authorized his counsel to make a specific statement on his behalf." *Id.* at 210.

■ In our order for CPT O to submit an affidavit, we provided him ample opportunity to explain his actions. He admits that he saw appellant writing a statement during a break in the proceedings. Although CPT O does not state that he read what appellant wrote, CPT O determined appellant "had not put any substantial thought into the statement and we had no opportunity to discuss what [appellant] would say to the [c]ourt."

Captain O does not explain why he did not have time during the break in the proceedings, or at counsel table to confer with appellant about this. Nor does CPT O explain why he did not ask the military judge for a recess to have such a discussion. Instead, he states that an "unplanned, but not inadvertent" decision to waive appellant's right to make an unsworn statement was made.

Captain O's responses to this court's order reveal he incorrectly concluded that the decision to allow appellant to make an unsworn statement was a tactical one that CPT O could make. Although seeing appellant write a statement, CPT O failed to consult with appellant, either at counsel table or at a recess, regarding the decision whether appellant would make an unsworn statement. Captain O's performance at sentencing, therefore, fell below the objective standard of reasonableness. This does not end our analysis, however. We must now determine whether CPT O's deficient performance prejudiced appellant.

### Prejudice

■ As the Supreme Court recently held, "Counsel cannot be 'ineffective' unless his mistakes have harmed the defense (or, at least, unless it is reasonably likely that they have). Thus, a violation of the Sixth Amendment right to *effective* representation is not 'complete' until the defendant is prejudiced." *United States v. Gonzalez–Lopez,* —— U.S. ——, ——, 126 S.Ct. 2557, 2563, 165 L.Ed.2d

409 (2006) (citing *Strickland,* 466 U.S. at 685, 104 S.Ct. 2052). In claims of ineffective assistance of counsel it is the defendant's burden to establish that there is "a reasonable *probability* that, but for counsel's deficiency, the result would have been different." *United States v. Kreutzer,* 61 M.J. 293, 300 (C.A.A.F.2005) (citations omitted).

Rule for Courts–Martial 1001(c)(2)(C) provides:

> The accused may make an unsworn statement and may not be cross-examined by the trial counsel upon it or examined upon it by the court-martial. The prosecution may, however, rebut any statements of facts therein. The unsworn statement may be oral, written, or both, and may be made by the accused, by counsel, or both.

Moreover, in *United States v. Rosato,* 32 M.J. 93, 96 (C.M.A.1991), our superior court recognized that it is well-established military criminal law that an appellant has a right to make an unsworn statement and that the right is an important one. "[S]o long as this valuable right is granted by the Manual for Courts–Martial, we shall not allow it to be undercut or eroded." *United States v. Partyka,* 30 M.J. 242, 246 (C.M.A.1990). Further, the scope of the unsworn statement is a broad one, allowing appellant to introduce through the unsworn statements matters for the sentencing authorities consideration that would be inadmissible if offered through sworn testimony. *United States v. Jeffery,* 48 M.J. 229, 230 (C.A.A.F.1998).

Here, appellant asserts that he wanted to use his unsworn statement to convey the following information:

> In my unsworn statement I wanted to have the opportunity to apologize to ... the man whose money I stole, my unit, and the Army. I wanted to tell the military judge about my family and my future plans. I believe that I had been a good soldier and I wanted the military judge to know that I wanted to remain a soldier and work through the problem.

At the time of trial, appellant had seven and one-half years of service. When appellant committed the offenses, he was serving with Alpha Company, 1–87th Infantry Battalion, 10th Mountain Division, part of Coalition Task Force Warrior, operating out of Shkin Firebase in Paktaka, Afghanistan (located along the Pakistani border). Appellant was a squad leader in 2nd Platoon, whose mission was to cordon and search Afghan compounds in the vicinity of Lasano Ridge. These cordon and search operations were designed to locate weapons caches and also gain the trust and support of the local nationals. The threat level in the area was high as several soldiers had been killed in recent months. These missions protected soldiers from future attacks by denying the enemy access to weapons and exposing enemy positions within local compounds.

Appellant's convictions arose from his conduct on a cordon and search operation at the home, or mud hut, of Haji Muhammad. During the search, appellant took rupees worth approximately $865.00 that he found in an unoccupied room in the hut. Haji Mohammad subsequently reported the money missing. When 2LT Thompson, the platoon leader, asked appellant if he knew anything about the missing money, he denied any knowledge.

Although appellant's conduct was indeed criminal and reprehensible, under the totality of the circumstances, we find that appellant has met his burden of demonstrating the denial of his right to make an unsworn statement prejudiced the results of his court-martial. Appellant's express statements of apology, contrition, and a desire to be rehabilitated, along with his service record and the other favorable sentencing evidence, including testimony from both commissioned and noncommissioned officers, might have persuaded the military judge to shorten appellant's sentence to confinement or allow appellant the opportunity to remain in the military. Because we cannot determine with confidence the effect this information would have had on the military judge, we accept the government's concession that a sentence rehearing is appropriate in this case.

## CONCLUSION

Accordingly, we hold trial defense counsel's failure to permit appellant to make an unsworn statement constituted ineffective as-

sistance of counsel.[2] The decision to make an unsworn statement was not a tactical one for counsel to make. Rather, it was a personal decision for appellant. Furthermore, we find appellant has met his burden in establishing prejudice.

The findings of guilty are affirmed. The sentence is set aside. The same or a different convening authority may order a rehearing on the sentence. If the convening authority determines that a rehearing on the sentence is impracticable, he may approve a sentence of no punishment.

Senior Judge SCHENCK and Judge WALBURN concur.

2. We advise defense counsel and military judges to take a cautious approach in protecting an accused's right to make an unsworn statement. Defense counsel should, of course, discuss with an accused well before the day of trial whether an accused would like to make an unsworn statement. If the *accused* chooses not to make an unworn statement, we urge counsel to memorialize this decision in writing and have the document entered as an appellate exhibit. Furthermore, military judges must be alert to an accused who fails to make an unsworn statement. Although the accused's decision to forgo the unsworn statement may have been an intelligent and informed decision, it may not have been. Absent some written or verbal representation from the accused that he chooses not to make an unsworn statement, we recommend that military judges discuss with the accused whether, in fact, it is the accused's personal decision.