# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, HERRING, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E1 ISAAC G. AGUIGUI**
**United States Army, Appellant**

ARMY 20140260

Headquarters, Fort Stewart
John T. Rothwell, Military Judge (arraignment)
Andrew J. Glass, Military Judge (trial)
Lieutenant Colonel Francisco A. Vila, Staff Judge Advocate (advice)
Colonel Luis O. Rodriguez, Staff Judge Advocate (recommendation)
Lieutenant Colonel Peter R. Hayden, Staff Judge Advocate (addendum)

For Appellant: Captain Patrick J. Scudieri, JA (argued); Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA; Captain Patrick J. Scudieri, JA (on brief); Major Christopher D. Coleman, JA; Captain Cody Cheek, JA (on reply brief).

For Appellee: Major Steve T. Nam, JA (argued); Colonel Mark H. Sydenham, JA; Lieutenant Colonel A. G. Courie III, JA; Lieutenant Colonel Daniel D. Derner, JA; Captain Steve T. Nam, JA (on brief); Major Anne C. Hsieh, JA.

18 November 2016

----------------------------------
MEMORANDUM OPINION
----------------------------------

PENLAND, Judge:

Appellant's trial defense team failed to present a sentencing case, thereby depriving him of effective assistance of counsel, undermining the reliability of the adjudged sentence, and leaving us with little choice but to set it aside and authorize a sentence rehearing. The trial defense team also performed deficiently in the findings phase of the case; however, under the facts and circumstances, we conclude appellant suffered no prejudice as a result.

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of premeditated murder and intentionally killing an unborn child, in violation of Articles 118 and 119a, Uniform Code of Military Justice, 10

U.S.C. §§ 918, 919a (2006) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for life without eligibility for parole, and forfeiture of all pay and allowances.

We review this case under Article 66, UCMJ. Appellant assigns two errors, alleging ineffective assistance of counsel and prosecutorial misconduct. The first merits discussion and relief; the second merits neither. We have considered matters personally asserted by appellant under *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982); aside from his complaint of ineffective assistance of counsel, they lack merit.

## BACKGROUND

### A. *Findings*

The case stems from the 17 July 2011 deaths of Sergeant (SGT) DA and her unborn child, with whom she was approximately twenty-three weeks pregnant. Multiple witnesses testified about SGT DA's troubled marriage to appellant. Some also described appellant's comments made before her death, indicating his desire to kill her and her unborn child.[1]

Appellant spent a few days immediately before 17 July 2011 away from home, cavorting with a fellow soldier, Michael Schaefer, and others. Sergeant DA was displeased with appellant for leaving her home alone. Appellant told Schaefer he could kill SGT DA and get away with it, citing a murder movie, "Pathology," in which medical students devise methods of killing others with no trace of foul play. During the road trip, appellant went with Schaefer and another witness, KF, and bought a bottle of potassium iodide. Schaefer testified appellant told him he wanted the potassium iodide as a salt substitute for SGT DA. However, KF testified either appellant or Schaefer told her the potassium iodide could be used to administer a lethal injection.

Appellant returned to his and SGT DA's quarters on Fort Stewart 17 July 2011. Later that night, appellant called 911 to report SGT DA was unresponsive. Emergency medical personnel responded and finding her unconscious on the floor, rushed her to the hospital, where she was soon pronounced dead. Her unborn child died with her.

Criminal Investigation Command (CID) agents spoke with appellant, who said he returned to his and SGT DA's home at 1500 on the day in question. Appellant also claimed he and SGT DA engaged in consensual sex in their bedroom, during

---

[1] For example, appellant told a witness, JV, he could "get rid of" SGT DA and the baby and split insurance proceeds with her "if [they] all stayed quiet."

which she agreed to wear handcuffs and other restraints.  Appellant said he then took a nap, woke up to an empty bed, and called 911 after finding SGT DA unresponsive on a couch in their living room.  He also claimed SGT DA had asked him to buy the potassium iodide for her, and he implored CID to determine whether it had caused her death.

Sergeant DA's autopsy began on 19 July 2011 and included multiple consultations with specialized pathologists.  The medical examiner noted multiple contusions on her body, including contusions "from anterior to posterior surface" on each wrist.  In the autopsy examination report, dated 3 February 2012, medical examiners concluded:  "Based on the information provided by investigative/medical reports and evidence detected at autopsy, both the cause and manner of death are best classified as 'Undetermined.'"  The medical examiner testified manual strangulation, including a carotid sleeper hold, was a possible manner of death.  Another expert pathologist, called by the government, testified that his review of the medical evidence pointed to suffocation as the cause of death, but he could not exclude other possibilities, such as sudden cardiac arrhythmia.  Then, another pathology expert testified for the prosecution, offering his conclusion that SGT DA died of manual strangulation, with multiple blunt injuries and binding ligatures.

Appellant offered various explanations for SGT DA's death.  The day after, he sent his neighbor, SGT JB, a message that she died of a blood clot in her heart.  He also told Schaefer soon after that she had died from a blood clot.  He told AR that the coroner's report said she had died of a pulmonary embolism.  Appellant told Private CS another story–SGT DA died as a result of Army medical providers giving her incorrect medications, and he had been able to say goodbye to her at the hospital after she was revived for about thirty seconds.[2]  He gave yet another reason to another witness, SC, telling her SGT DA had died in a car accident.

Around the middle of August 2011, appellant and Schaefer got into an argument, culminating when Schaefer asked him to explain what had actually happened to SGT DA and how he had gotten all of the money they were in the midst of spending on strippers.  Appellant told him SGT DA agreed to wear handcuffs and engage in sexual intercourse.  However, once she was handcuffed appellant put a bag over her head and strangled her until she stopped breathing, sexually assaulting and sodomizing her in the process.  Appellant told Schaefer, "I told you I would get away with it."  When Schaefer told appellant he would report him to law enforcement, appellant said he would implicate him in the murder and that he was "ready to go to prison."

The findings phase of appellant's court-martial included multiple instances of objectionable hearsay and descriptions of uncharged misconduct.  The most damning

---

[2] SGT DA never regained consciousness before her death.

hearsay testimony came from SR, who spoke with SGT DA while serving as Fort Stewart's lead victim advocate. Before she began to testify at trial, defense counsel objected, "If this witness testifies substantially as she did in the 39(a), we don't see how any of that would be relevant to The Charge and misconduct in this case." After trial counsel offered a theory of relevance, the military judge asked whether the witness's testimony would include hearsay. Trial counsel responded the government, indeed, intended to offer hearsay through SR, conceding it was inadmissible under Military Rule of Evidence [hereinafter Mil. R. Evid.] 803(4) but arguing Mil. R. Evid. 803(3) would allow it. The military judge and defense counsel then had the following exchange:

> DC: Your Honor, we would object also on the grounds of 404(a) that this is basically being used as a propensity argument and as for--
>
> MJ: Counsel, I am confused by that. He's not charged with sexual assault.
>
> DC: Right. We believe--
>
> MJ: So you are saying that it is propensity, "He's not a bad guy," so therefore more in 404(b).
>
> DC: Right.
>
> MJ: But that's okay. So you also object under 404(b)?
>
> DC: Correct, as well as 403 and as for the hearsay, the 803(3), I believe--
>
> MJ: I think that is what you're saying, right, Counsel, 803(3)? [asking trial counsel]
>
> TC: Yes, Your Honor
>
> DC: I believe that the victim's existing state of mind relates back to the 404(b) that they are trying to use this to somehow prove that there is motive, intent, and planning to kill the victim as is charged here. Her making a restricted sexual assault report doesn't flow into a murder charge.
>
> [. . . .]

4

MJ:  Here is what we are going to do, Counsel.  I'm going to ask you to object as the testimony goes along.  Then I will rule after hearing the testimony.

[. . . .]

MJ:  Call the witness, Defense Counsel, I think you are tracking what I've told you, but its [sic] incumbent upon you to object to the hearsay as it comes in.

DC:  Yes, Your Honor.

Once on the stand, SR answered government counsel's question, "What did [SGT DA] specifically tell you?":

She said that there had been some verbal abuse early on and when she came to see me, there had been physical abuse and that sexually he had been coercing her or forcing her into having sex with him as well as his friends.

Defense counsel maintained this testimony was inadmissible under Mil. R. Evid. 404(b) and Mil. R. Evid. 403 but made no hearsay objection to it.  After SR stepped down from the stand, the military judge and defense counsel had the following exchange:

MJ: . . . Now, Counsel, I note that you didn't object under hearsay grounds, I don't think, to anything.

DC:  No, you are correct, Your Honor.[3]

MJ:  So you have no hearsay objection?

DC:  Correct.[4]

---

[3] Actually, defense counsel had objected on hearsay grounds to SR's description of SGT DA's questions about her reporting options.  The military judge ultimately sustained this objection, though apparently deciding it on relevance grounds rather than hearsay.

[4] Relying on *United States v. Reynolds*, 29 M.J. 105 (C.M.A. 1989), the military

(continued . . . )

Multiple government witnesses described appellant's frequent but uncharged misconduct. Defense counsel did not object when: 1) some described appellant's frequent use of illegal drugs, including spice, ecstasy, and cocaine; 2) SC testified that she and appellant had an extramarital affair; or 3) JV testified that she witnessed a physical altercation between appellant and SGT DA.[5]

Aside from the hearsay and uncharged misconduct evidence, trial counsel offered, and the military judge admitted, without objection, an exhibit consisting of dozens of pages regarding SGT DA's life insurance policy and proceeds. However, nearly twenty of its pages contained plainly irrelevant matters, including suspicions about appellant.

The military judge, with a level of attention to detail that counsel did not display, clarified after announcing his findings of guilty:

> In deliberating on findings, the court did not consider pages 19 through 37 of Prosecution Exhibit 44, that is, the Prudential document. Pages 19 through 37 included discussions of other possible charges, suspicions about the accused's possible involvement in crime, alleged involvement in other crimes, a media account, and administrative and subpoena matters. Those matters are not appropriate, not relevant, and are excluded under Military Rule of Evidence 403.

### B. Sentencing

After the government's sentencing case, the military judge granted defense counsel's request for a brief recess. When the court-martial resumed, the defense rested without presenting a sentencing case. The military judge then confirmed directly with appellant that he understood his rights to present evidence in extenuation and mitigation, including his right to testify or make an unsworn statement. He also confirmed appellant had fully discussed his rights with his defense counsel. Finally, the military judge asked, "Do you support your counsel's decision not to introduce any evidence in your sentencing case?" Appellant

---

(. . . continued)

judge ultimately ruled SR's testimony was admissible under Mil. R. Evid. 404(b). We have no quarrel with this detailed analysis and ruling, which were well within the bounds of reasonable discretion.

[5] On direct examination, JV also described SGT DA's comments to her about appellant's drug use and excessive spending. Between direct and cross-examination, the military judge told defense counsel it was his burden to make hearsay objections.

responded he did and, after closing for deliberations, the court-martial sentenced appellant as described above.

## C. *Defense Counsel Affidavits*

In response to appellate defense counsel's brief, which assigned as error ineffective assistance of counsel during the findings and sentencing portions of the case, government appellate counsel filed a motion to order affidavits from trial defense counsel. We granted the motion and ordered the government to obtain affidavits from appellant's two trial defense counsel, Major William J. Cook, III and Captain Scott A. Noto, no later than 23 June 2016. On 21 June 2016, we received the affidavits, which are virtually identical and state, in pertinent part:

> Throughout our representation of PVT Aguigui, we advised him of his rights as an accused, including his right to call witnesses on his behalf during pre-sentencing, present evidence during pre-sentencing, and make a statement on his own behalf. PVT Aguigui did not advise us of any potential witnesses for pre-sentencing other than those listed on the Witness List filed with the Court. We were prepared to call witnesses and put on additional evidence during pre-sentencing. However, during a recess, PVT Aguigui informed us of his decision to not put on any evidence during pre-sentencing. PVT Aguigui's decision was confirmed by the Military Judge on the record.
>
> [. . . .]
>
> The decision to refrain from objecting to certain hearsay statements was a strategic decision. We did not believe the evidence presented by the government's lay witnesses was particularly compelling and thus believed that its presentation by the government only served to weaken, rather than strengthen, its case. We believed the Military Judge would give such evidence the little weight it deserved. During trial, we objected when we believed it was appropriate.
>
> Likewise, the decision not to challenge the government's evidence of PVT Aguigui's drug use, partying at strip clubs, and similar evidence was a strategic decision. Again, we did not consider this evidence particularly compelling in light of the issues presented in this case

7

> (particularly, the issues raised by the medical evidence)
> and believed the Military Judge would give such evidence
> the little weight it deserved.  During trial, we objected
> when we believed it was appropriate.

(Internal paragraph numbers omitted.).

During oral argument we asked probing questions about the affidavits, which depicted, *inter alia*, a trial defense team who rendered a deficient assessment of the findings evidence, were unprepared for the pre-sentencing phase of the case, and were unfamiliar with the basic responsibility of defense counsel to decide what evidence to present on behalf of an accused.

After oral argument, and in a rather uncommon development that, at best, demonstrates the initial affidavits were summarily prepared with limited reflection on their trial efforts, trial defense counsel prepared additional affidavits to "supplement" the original ones.  The affidavits tacitly respond to our questions and observations at oral argument.  On 9 November 2016, appellate government counsel moved to attach the supplemental affidavits, without acknowledging passage of the ordered 23 June 2016 deadline and without requesting leave to file them out of time or offering good cause to do so in contravention of Rule 24.2 of our Internal Rules of Practice and Procedure [hereinafter Rules].  Furthermore, oral argument was on 13 October 2016, rendering any supplemental filings due by 20 October 2016 under Rule 16.1(e).  After considering and finding persuasive appellate defense counsel's brief in opposition, we denied the motion to attach government exhibits 4 and 5 on 16 November 2016.

## LAW AND ANALYSIS

Military accuseds have a Constitutional and codal right to the effective assistance of counsel at trial.  *United States v. Bolkan*, 55 M.J. 425, 427 (C.A.A.F. 2001) (citing U.S. Const. Amend. VI; Art. 27, UCMJ, 10 USC § 827; and *United States v. MacCulloch*, 40 M.J. 236 (C.M.A. 1994)); *see also United States v. Gooch*, 69 M.J. 353, 361 (C.A.A.F. 2011).  "The right to counsel is probably the paramount right in ensuring that the adversarial system functions properly."  *Bolkan*, 55 M.J. at 427.  We review de novo claims that an appellant did not receive effective assistance of counsel.  *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009).

"In assessing the effectiveness of counsel we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984)."  *Gooch*, 69 M.J. at 361.  To overcome the presumption of competence, the *Strickland* standard requires appellant to demonstrate "both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice."  *United States v.*

*Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687 and *Mazza*, 67 M.J. 474). An appellant is prejudiced by counsel's deficient performance where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015).

This Constitutional right applies not only to the merits phase of trial, but to each critical stage in a criminal proceeding where substantial rights of a criminal accused may be affected, which includes the sentencing phase of a military court-martial. *United States v. Dobrava*, 64 M.J. 503, 505 (Army Ct. Crim. App. 2006) (citing *United States v. Alves,* 53 M.J. 286, 289 (C.A.A.F. 2000)). The Rules of Professional Conduct for Lawyers applicable to military counsel make it clear an attorney shall abide by the client's decision to testify or not. Army Reg. 27-26, Rules of Professional Conduct for Lawyers, Appx. B. R. 1.2 (Scope of Representation)(1 May 1992). And the "decision to make an unsworn statement is personal to the accused." *United States v. Marcum*, 60 M.J. 198, 209 (C.A.A.F. 2004). But strategic and tactical decisions are within the sole discretion of defense counsel. *Dobrava*, 64 M.J. at 506.

Ineffective assistance of counsel at the sentencing process can occur when counsel fails to introduce evidence that would be of value to the accused in presenting a case in extenuation and mitigation. *United States v. Boone*, 49 M.J. 187, 196 (C.A.A.F. 1998). Counsel's failure to present matters in extenuation and mitigation during the sentencing phase of trial "raises concerns about a breakdown in the adversarial process." *United States v. Weathersby*, 48 M.J. 668, 671 (Army Ct. Crim. App. 1998). In these situations, the record of trial will likely not include the evidence that counsel should have presented, but did not. *Boone*, 49 M.J. at 197. When this happens, there is no record from which we can determine the sentence the court-martial would have imposed absent the error. *Id*. at 198-99; *see also United States v. Sickels*, ARMY 20110110, 2013 CCA LEXIS 563, *7 (Army Ct. Crim. App. 23 Jul. 2013) (mem. op.) ("Where defense counsel fail to make adequate investigation of possible evidence in extenuation and mitigation and fail to present any evidence in sentencing at trial, the sentence may be unreliable and may require a rehearing on sentence as a result."). Where "the record does not contain the evidence omitted by the constitutional error" an appellant "must have the opportunity to make the record that he did not have the opportunity to make because of the absence of the guiding hand of counsel." *Boone*, 49 M.J. at 198-99.

## A. Findings

The record shows a defense team who devoted significant effort toward contesting, and even offering an alternative explanation for, the forensic medical evidence. We are reluctant to question this aspect of defense counsels' tactics, for

the medical component of this case was indeed significant. However, this was not the case's only component. Instead, the non-forensic component–including testimony about appellant's uncharged misconduct, suspicious and incriminating statements, combined with hearsay testimony about SGT DA's report of appellant's abuse–answered the questions that SGT DA's autopsy begged. Put another way, no reasonable defense counsel would address the non-forensic component as indifferently as trial defense counsel did here.

We have carefully considered trial defense counsels' affidavits; they offer objectively unconvincing explanations for the lack of objections to uncharged misconduct and hearsay evidence. Even if we concluded the rationale for not objecting to uncharged misconduct evidence was tactically reasonable, we reject as unsound their rationale regarding the hearsay evidence: "its presentation by the government only served to weaken, rather than strengthen, its case." This post-trial assessment is contradicted by the defense team's multiple objections to SV's testimony describing SGT DA's report of appellant's previous abuse. This contradiction begs a rhetorical question: If the defense team believed this evidence actually *undermined* the case against their client, why did they characterize it as uncharged misconduct evidence and oppose its admission? Contrary to the affidavits provided, the record establishes the trial defense team viewed this evidence, before and during trial, as sufficiently *inculpatory* to resist its admission. However, even after what some may view as prompting by the military judge, trial defense counsel missed the most fundamental and likely effective objection–hearsay.

We hold the trial defense team was deficient during the findings phase. However, considering appellant's multiple non-hearsay statements about his desire to kill SGT DA, his conflicting explanations about her cause of death, and his confession to Michael Schaefer, we further hold the deficiency resulted in no prejudice to the findings. Appellant has not established a reasonable probability of a different verdict had his trial defense counsel performed in a tactically reasonable manner.

## B. Sentencing[6]

An accused is responsible for deciding whether he will make any statement to a court-martial. The defense counsel is responsible for deciding whether to present witnesses and other evidence during the case, and this responsibility cannot be outsourced to an accused or anyone else. The military judge's well-principled intervention in this remarkably incomplete pre-sentencing phase demonstrates he

---

[6] Appellant's submissions and trial defense counsels' affidavits agree on the fundamental point regarding the pre-sentencing case: trial defense counsel presented no evidence or witnesses. Therefore, an additional *DuBay* hearing is not necessary to decide this appeal. *United States v. Ginn*, 47 M.J. 236, 244 (C.A.A.F. 1997).

keenly understood the difference, for after asking appellant whether it was his personal decision not to provide a statement, he then asked, "Do you support your *counsel's decision* not to introduce any evidence in your sentencing case?" (Emphasis added).

On this point, trial defense counsel write identically: "[D]uring a recess, PVT Aguigui informed us of his decision to not put on any evidence during pre-sentencing. PVT Aguigui's decision was confirmed by the Military Judge on the record." This quote warrants particular scrutiny. The second sentence, clearly referring to the one before, is incorrect as a matter of fact–the military judge pointedly clarified that the decision to present a sentencing case belonged to *counsel*. Beyond this inaccuracy, the quote evinces a *continued* misunderstanding of counsel's responsibility. Even if we were to strain to interpret the affidavits as counsels' expression that *they* decided not to present a case, they offer absolutely no supporting tactical reason.

Appellant faced a maximum sentence of life without eligibility for parole, and the military judge sentenced him to that punishment after hearing no evidence from the defense.[7] Where such a "breakdown"[8] of advocacy has occurred, we have no confidence in the sentence's reliability. *Weathersby*, 48 M.J. at 671; *Boone*, 49 M.J. at 196; *Strickland*, 466 U.S. at 687.

## CONCLUSION

The findings of guilty are AFFIRMED.

---

[7] In concluding trial defense counsel were ineffective by failing to present a pre-sentencing case, we decline to address whether they adequately prepared one. Appellant's brief claims trial defense counsel were also deficient in preparing a sentencing case. In response to our order for affidavits, counsel perfunctorily address this point: "PVT Aguigui did not advise us of any potential witnesses for pre-sentencing other than those listed on the Witness List filed with the Court. *We were prepared* to call witnesses and put on additional evidence during pre-sentencing." (Emphasis added).

Additionally, Rule for Courts-Martial 1001(f)(2) allows a sentencing authority to "consider...[a]ny evidence *properly* introduced on the merits before findings...." (Emphasis added). The military judge here may have considered, for sentencing purposes, the uncharged misconduct and hearsay evidence described earlier in this decision.

[8] *Sickels*, 2013 CCA LEXIS 563, at *9.

AGUIGUI–ARMY 20140260

The sentence is set aside. A rehearing on sentence is authorized, during which trial defense counsel may object to the re-sentencing authority's consideration of uncharged misconduct and hearsay evidence that, but for original counsel's deficient performance, would not have been admitted on findings.

Senior Judge CAMPANELLA and Judge HERRING concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

12