# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant First Class BILLY J. SMITH JR.**
**United States Army, Appellant**

ARMY 20160049

Headquarters, United States Army South
Jeffery R. Nance, Military Judge
Lieutenant Colonel James S. Tripp, Staff Judge Advocate

For Appellant: Major Patrick J. Scudieri, JA; Catherine M. Cherkasky, Esquire (on brief); Major Julie L. Borchers, JA; Catherine M. Cherkasky, Esquire (on reply brief).

For Appellee: Colonel Tania M. Martin, JA; Major Cormac M. Smith, JA; Captain Natanyah Ganz, JA (on brief).

28 September 2018

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

MULLIGAN, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of attempted forcible sodomy, one specification of indecent liberty with a child, one specification of aggravated sexual abuse of a child, two specifications of sexual abuse of a child, and eight specifications of forcible sodomy in violation of Articles 80, 120, 120b, and 125 Uniform Code of Military Justice, 10 U.S.C. §§ 880, 920, 920b, 925 (2012) [UCMJ]. The military judge sentenced appellant to a dishonorable discharge and confinement for twenty-five years, but granted appellant six months and two days' credit against confinement. The convening authority approved the sentence as adjudged but granted appellant an additional five days' confinement credit.

This case comes before us for review under Article 66, UCMJ. On appeal, appellant asserts the military judge rendered several specifications impermissibly ambiguous by striking the word "divers" and that his counsel[1] were ineffective in investigating and presenting a sentencing case. Both issues merit discussion but no relief. The matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), lack merit.

## BACKGROUND

*A. The Offenses*

Appellant married JS on New Year's Eve, 1989. He was just shy of his seventeenth birthday and had been raised in the child foster care system. His wife was thirty years old and had two minor children from a previous marriage. Her daughter, CW, was eight years old, and her son, DW, was eleven years old.

Both CW and DW testified at the court-martial to being sexually abused by appellant repeatedly after he moved in with them. CW reported the sexual abuse to a school counselor in 1991. Although CW later recanted the claim, she went to live with her biological father. DW testified that both before and after his sister CW moved, he also was a target of appellant's sexual abuse. That abuse continued until 1997 when DW graduated from High School and enlisted in the Army. Appellant, twenty-four years old at the time, also enlisted in the Army in 1997.

In 1999, appellant was stationed at Fort Hood, Texas. He and his wife took managerial custody of a young boy, JAC, who was thirteen years old. He had an older brother, JOC, who was sixteen years old. JOC was only with appellant and his wife for several months before appellant, who by then had moved to Arizona, asked that JOC be removed from the home, leaving JAC alone. JAC testified to sexual abuse that began even before appellant received formal custody and included both oral and anal sodomy. The abuse lasted until after JAC graduated from high school and moved out.

In 2006, the state of Texas charged appellant with sexual offenses involving DW. The case went to trial in 2008. JAC testified as a character witness for appellant. He did not reveal that he had been the victim of any sexual abuse by appellant. The jury was unable to reach a verdict and the trial resulted in a hung jury. The case was never further pursued.

In 2010, appellant was stationed at Fort Huachuca, Arizona. Between November 2009 and May 2010, an eleven-year-old boy who was a ward of the state,

---

[1] Appellant was represented by three military defense counsel, Captain (CPT) AF, CPT SL, and CPT JB. Each were detailed as appellant's U.S. Army Trial Defense Service (TDS) military counsel.

SS, began to visit appellant and his wife. SS was a foster child and had been cycled through more than fifteen different foster homes. In May 2010, appellant and his wife adopted a newborn infant, DS. In July 2010 appellant and his wife took SS to live with them. They applied to the State of Arizona to adopt SS and their petition of adoption was granted in July 2011. After appellant and his wife moved SS into their home, appellant orally and anally sodomized SS and forced SS to orally and anally sodomize him. In summer 2011, appellant and SS moved to Warner Robins Air Force Base, Georgia. The rest of appellant's family stayed behind in Arizona. In Georgia, appellant orally and anally sodomized SS and also forced SS to orally and anally sodomize him. Appellant purchased gifts for SS in exchange for sexual gratification. Between 22-24 February 2012, appellant and SS took a trip to Shaw Air Force Base, South Carolina where appellant anally sodomized SS and forced SS to orally sodomize him.

In 2013, appellant and his family moved to San Antonio, Texas. While there, appellant forced SS to masturbate his penis, and also forced SS to watch as appellant masturbated his own penis until ejaculation. Appellant also forced SS to orally sodomize him.

In addition to SS and DS, appellant and his wife adopted a two-year-old girl, AS, in August of 2013.

In April 2014, appellant and SS, now fifteen years old, became involved in a physical altercation. SS ran to his next-door neighbor, ES, for protection and reported the abuse to her. ES described SS as distraught and the police were called. Appellant's wife also called the police and alleged that SS was sexually abusing his younger sister, AS, and had threatened her when confronted with the allegation. Appellant's wife also claimed appellant had acted in defense of AS. SS was subsequently arrested and taken into a juvenile detention facility where he stayed for eighteen months. At the juvenile detention facility, SS reported the abuse again, and an investigation into the appellant followed.

The record shows a defense team who believed they could succeed by contrasting appellant, a soldier with almost twenty years of service, against SS, a troubled and angry foster child who had cycled through many households during his childhood. The defense theory at trial focused on discrediting SS's testimony. Appellant highlighted the fact that SS had stayed in multiple foster homes during his time in the foster system. Character witnesses testified about SS's behavioral issues, and appellant maintained that SS fabricated the allegations to cover up his own sexual abuse of his younger sister, AS. Appellant denied all allegations of abuse and relied on testimony from his wife, JS, who lived with him for almost all periods of alleged abuse. JS testified that appellant was a hardworking, loving father who adopted foster children out of generosity. After a contested trial before a military judge, appellant was ultimately convicted of several charges involving SS.

During findings, the military judge excepted the words "on divers occasions" from Charge III, Specifications 3, 10, 11, and 15, but did not specify on what occasions the offenses had occurred.

### B. Sentencing

During sentencing, defense counsel admitted an extensive "Good Soldier Book"[2] and an estimated retirement benefits worksheet. After admitting the documents, defense counsel presented five character witnesses who emphasized appellant's tough upbringing and good character.[3] Defense counsel did not offer any military witnesses during sentencing. Although the defense team knew about appellant's neck surgeries and medical conditions, they chose not to present that to the military judge. Appellant made an unsworn statement, in which he spoke about his difficult upbringing and apologized to SS and his family. Defense counsel asked the military judge for mercy with sentencing and emphasized his difficult childhood and potential for rehabilitation in the future.

### LAW AND ANALYSIS

### A. Exception of "divers" from Specifications 3, 10, 11, and 15 of Charge III

Appellant alleges that this court cannot conduct a factual review of Specifications 3, 10, 11, and 15 of Charge III because they were rendered impermissibly ambiguous after the military judge excepted from the specifications the words "on divers occasions."

The test for factual sufficiency "is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses" we are convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). We review the ambiguity of a verdict and whether a factual sufficiency review is precluded *de novo*. *United*

---

[2] The book contained appellant's enlisted record brief, noncommissioned officer evaluations, awards (including a bronze star), evaluations from different schools, photos from deployments, letters detailing his service, and several newspaper articles discussing appellant's bronze star and selection to the Army shooting team.

[3] Defense called two of appellant's brothers to speak about appellant's childhood, abusive parents, and time in the foster system. VS, a caretaker from appellant's time in the foster system, also discussed his difficult childhood. Appellant's close friend, LS, discussed his rehabilitative potential. Appellant's wife testified that she would provide support for appellant after his incarceration and discussed the consequences of a long period of confinement for their family.

*States v. Ross*, 68 M.J. 415, 417 (C.A.A.F. 2010) (citing *United States v. Rodriguez*, 66 M.J. 201, 203 (C.A.A.F. 2008)).

"If there is no indication on the record which of the alleged incidents forms the basis of the conviction, then the findings of guilt are ambiguous and the Court of Criminal Appeals cannot perform a factual sufficiency review." *United States v. Walters*, 58 M.J. 391, 396-97 (C.A.A.F. 2003). However, when a military judge excepts "on divers occasions," this court "may review the record to determine if there was only a single incident that met 'all the details of the specification' for which an appellant was convicted." *United States v. Trew*, 68 M.J. 364, 368 (C.A.A.F. 2010) (quoting *United States v. Wilson*, 67 M.J. 423, 428 (C.A.A.F. 2009)).

*1. Specification 3 of Charge III*

Appellant was charged in Specification 3 with committing "on divers occasions between on or about 22 July 2010 and on or about 22 July 2011" oral sodomy on SS at or near Fort Huachuca, Arizona. The evidence in the record contains only a single instance of appellant committing oral sodomy at or near Fort Huachuca in summer 2010. During trial, trial counsel asked SS the following question: "Then you said, at some point [appellant] put his penis in your mouth. What states did that happen?" SS responded "Arizona." Trial counsel then asked: "And how many times did that happen in Arizona?" SS responded "Once." Because there is only one instance of alleged conduct, there is no *Walters* problem present in this specification. Although the military judge did not specify the exact date the alleged conduct occurred when he changed the specification, the specification nevertheless remains unambiguous when reviewing the record because the conduct is only mentioned once. We can review the factual sufficiency of appellant's conviction for this specification without fear of ambiguity.

*2. Specifications 10 and 11 of Charge III*

Similarly, Specifications 10 and 11 are not impermissibly ambiguous because SS describes only one instance when the alleged conduct happened for each specification. During a trip from Warner Robins Air Force Base, Georgia to Shaw Air Force Base, South Carolina between 22 and 24 February 2012, appellant orally and anally sodomized SS once in their hotel room. Because there is no risk of ambiguity in the findings, was can review appellant's convictions of these specifications for factual sufficiency.

5

### 3. Specification 15 of Charge III

In finding the appellant guilty of Specification 15 of Charge III, the military judge struck the words "divers occasions" but added the words "attempt" and "attempt to" to a charge of anal sodomy. The military judge thereby convicted appellant of the lesser-included offense of attempted forcible sodomy on one occasion. The evidence in the record is not impermissibly ambiguous as to this specification because SS described only one instance of attempted anal sodomy that occurred at Warner Robins Air Force Base between 2011 and 2013. After SS's description, trial counsel asked, "After that day, did [appellant] ever force you to put your penis in his anus again?" SS confirmed that the incident he described was the only time that anal sodomy was attempted at Warner Robins Air Force Base. Given the evidence, there is no *Walters* problem with this specification, and we can review appellant's conviction for this specification for factual sufficiency without any double jeopardy risk for appellant.

Having resolved appellant's *Walters* argument, we find that Specifications 3, 10, 11, and 15 are factually sufficient in that we are convinced of appellant's guilt beyond a reasonable doubt.

### B. Ineffective Assistance of Counsel

Appellant asserts that defense counsel were ineffective during the presentencing phase of trial. First, appellant claims his defense counsel failed to adequately investigate and present appellant's medical history, which included a skull fracture as an infant and a traumatic brain injury (TBI) diagnosis while on active duty. Second, appellant avers his defense counsel failed to put on a meaningful sentencing case that highlighted appellant's nearly twenty-year military career and accomplishments.

Military accused have a constitutional and statutory right to the effective assistance of counsel at trial. *United States v. Bolkan*, 55 M.J. 425, 427 (C.A.A.F. 2001) (citing U.S. Const. amend. VI; UCMJ art. 27, 10 USC § 827; *United States v. MacCulloch*, 40 M.J. 236 (C.M.A. 1994)). This constitutional right applies "not only to the merits phase of trial, but to each critical stage in a criminal proceeding where substantial rights of a criminal accused may be affected," which includes the sentencing phase of a military court-martial. *United States v. Dobrava*, 64 M.J. 503, 505 (Army Ct. Crim. App. 2006) (citing *United States v. Alves*, 53 M.J. 286, 289 (C.A.A.F. 2000)).

We review ineffective assistance of counsel claims *de novo. United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015); *United States v. Datavs*, 71 M.J. 420, 424

(C.A.A.F. 2012). The test for ineffective assistance of counsel requires an appellant to prove both (1) that his counsel's performance was deficient, and (2) that the deficiency resulted in prejudice. *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687, (1984)).

Under the first *Strickland* prong, appellant must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. To decide this issue, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The presumption of competence is rebutted by "a showing of specific errors made by defense counsel" that were "unreasonable under prevailing professional norms." *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001) (citations omitted).

For *Strickland*'s second prong for prejudice, we require a showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To undermine an appellate court's confidence in the outcome requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citations omitted). "An appellant must establish a factual foundation for a claim of ineffectiveness; second-guessing, sweeping generalizations, and hindsight will not suffice." *United States v. Davis*, 60 M.J. 469, 473 (C.A.A.F. 2005) (citing *United States v. Key*, 57 M.J. 246, 249 (C.A.A.F. 2002); *Alves*, 53 M.J. at 289; *United States v. Gray*, 51 M.J. 1, 19 (C.A.A.F. 1999).

During presentencing, ineffective assistance of counsel can occur when counsel fails to adequately present a sentencing case and introduce evidence that would assist the accused during extenuation and mitigation. *See United States v. Boone*, 49 M.J. 187, 196 (C.A.A.F. 1998).

Appellant attaches great significance to the fact that, although in possession of documents that showed appellant had a skull fracture as an infant, defense counsel were not aware of appellant's medical issues as an infant, and did not adequately investigate either his childhood skull fracture,[4] or his later TBI diagnosis during his military service.[5] Appellant maintains that this medical information

---

[4] Appellant suffered a skull fracture at 9 months old after being dropped by a neighbor.

[5] Appellant was diagnosed with TBI on a deployment to Qatar following an episode of syncope on an aircraft.

would have resulted in a more successful sentencing case. The record does not support appellant's argument.

## 1.  *Deficient Performance During Presentencing*

In response to appellant's allegation of ineffective assistance of counsel, we ordered affidavits from appellant's three trial defense counsel.[6]  Appellant's lead defense counsel, CPT AF, was assigned to the case from the beginning and represented appellant at the Article 32 investigation.  Two other defense counsel joined the defense team later.  CPT L was assigned after the Article 32 hearing was completed, and CPT JB was assigned after the case was referred to a general court-martial.  A document admitted as a Defense Appellate Exhibit showing appellant suffered a fractured skull as an infant was also found as an attachment to the Article 32 report.

In their affidavits, CPT L and CPT JB acknowledge they had no knowledge of appellant's skull fracture suffered as an infant.  CPT AF in his affidavit does not address the skull fracture specifically.  He states that the defense chose not to highlight evidence of appellant's medical conditions in sentencing, instead pursuing a theme of contrition and sympathy for his family.  As the lead defense counsel, CPT AF was responsible for the defense strategy during findings and sentencing.

CPT AF made a tactical decision "not to highlight other medical conditions of [appellant] during the sentencing case."  He was "acutely aware" of appellant's medical issues and during sentencing he "consciously chose not to address the issue that [appellant] had neck surgery."  Each member of appellant's defense team stated that appellant never displayed any sign of mental defect or physical difficulty during trial, and none thought emphasizing appellant's medical issues would be an effective mitigation strategy.

Without more, a skull fracture suffered by appellant as a nine-month-old infant is not itself a significant mitigating factor in his court-martial for multiple sexual offenses forty-three years later.  In the context of appellant's defense, he did not proffer that he suffered from a mental disease or defect; his defense was he did not commit the acts.  Although the defense team had this information in their possession, the fact they attributed little significance to it was not an error that shows counsel were deficient under the first prong of *Strickland*.  Appellant's evidence and argument do not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  We conclude that, defense counsels' failure to pursue

---

[6] Appellant did not sign an affidavit alleging ineffective assistance of counsel. This issue was instead raised in defense appellate counsel's brief. Because there are no competing affidavits, analysis pursuant to *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997) is unnecessary.

or present evidence related to appellant's skull fracture as a nine-month-old infant is not an error that rises to the level of ineffective assistance of counsel.

Defense counsel's sentencing strategy was for appellant to appear contrite and apologetic in hopes of gaining mercy from the military judge.[7] In addition, the defense worked to show appellant would have enough family support to ensure that he would not commit the alleged offenses again in the future. We do not find the defense team's sentencing strategy and decision not to introduce appellant's medical history was ineffective.

### 2. Emphasis of Appellant's Military Service Record

Appellant also criticizes his defense counsel for not adequately emphasizing his military service during presentencing. Considering the extent of appellant's "Good Soldier Book" and the record, appellant's defense counsel were not deficient by not calling military witnesses or emphasizing appellant's military service further.

Defense counsel interviewed all military witnesses submitted by appellant.[8] They did not contact other military sentencing witnesses found in appellant's "Good Soldier Book" because of concerns over redundancy and potentially detrimental cross-examination. CPT SL stated "We feared that no matter what the military witnesses would have said, the Government would turn them during cross-examination by asking questions like, 'does a good soldier molest children' over and over. We believed that no matter what the response, it would not be helpful for [appellant] if a witness either changed his or her opinion or lost credibility." Instead, defense counsel reasonably relied on documentary evidence to avoid this scenario. *Cf. United States v. Perez*, 64 M.J. 239, 244 (C.A.A.F. 2006) (defense counsel's decision to reference "good soldier" testimony given during findings portion of trial, without calling them to the stand during sentencing was not ineffective assistance; counsel avoided dangers of cross-examination by prosecution).

Our review of the record supports defense counsels' statements and strategy involving appellant's military service record. The defense team did not discuss appellant's military service at length during presentencing, counsel instead accomplished this through admitting documentary evidence. The "Good Soldier

---

[7] Appellant faced a maximum sentence of confinement for life for the convicted specifications.

[8] CPT SL submitted to the court the list of all witnesses submitted by appellant. JM was the only military witness. He was interviewed and testified during the merits portion of the trial. The military judge was able to consider JM's testimony during sentencing.

Book" is an adequate representation of appellant's military service record and covers all aspects of his service. We find defense counsel's presentencing case effective in regard to appellant's military service.

### 3. Appellant Has Not Established Prejudice

Even if we found that defense counsel's performance was deficient for the reasons appellant alleged, we would still find appellant fails on the prejudice prong of *Strickland*. Even if the omitted evidence were presented there is no reasonable probability the results of the proceedings would have been different.

Appellant has not demonstrated specific prejudice. He has not shown why his medical issues and military witnesses *would* have resulted in a shorter adjudged sentence; he has merely alleged that they *could* have resulted in a shorter adjudged sentence. Appellant has not established the factual foundation required to show prejudice in this case. Assuming for the sake of argument that defense counsel were deficient in not introducing medical evidence and the military witness testimony, it is still unclear how this would have mitigated the adjudged sentence.

During presentencing, appellant testified about his difficult upbringing and unstable childhood in his unsworn statement. The military judge knew about appellant's childhood from several family character witnesses who testified both during the merits and presentencing portions of trial. The military judge also observed appellant, who was coherent throughout trial and while he was cross-examined by the government. In finding the appellant guilty of serious offenses, the military judge rejected appellant's denial of misconduct. Faced now with sentencing a mendacious accused, it is difficult for this court to imagine that the military judge would have attached such significance to the evidence of appellant's medical issues or testimony from military witnesses during presentencing to have resulted in a lesser sentence.

Therefore, we do not find appellant has shown prejudice due to his counsel's performance during the presentencing hearing.

**CONCLUSION**

The findings of guilty and sentence are AFFIRMED.

Judge FEBBO and Judge SCHASBERGER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court